**Phillip A. SHEELY, Appellant,**

v.

**Mildred R. BEARD, Appellee.**

Superior Court of Pennsylvania.

Argued April 16, 1997.
Filed June 27, 1997.

Thomas P. Lang, York, for appellants.

Donald R. Dorer, Camp Hill, for appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgment entered in the Court of Common Pleas of York County following the denial of appellants' post-trial motion for judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, a new trial. Herein, appellants contend:

(1) A new trial is warranted since appellee should have been prohibited from introduc-

ing into evidence [at the second trial] the first deposition of Gladys S. Fenichel, M.D., since it was taken for use at the first trial.

(2) A new trial is warranted since Dr. Fenichel was not qualified properly as an expert witness and should have been precluded from testifying.

(3) A new trial is warranted since Dr. Fenichel's deposition taken at the first trial contained impermissible hearsay testimony and should have been stricken.

(4) A new trial is warranted since the jury's verdict was against the weight of the evidence.

(5) Appellants should be granted a judgment n.o.v. since no two reasonable minds would disagree that the verdict was improper.

After a careful review of the record, the parties' briefs and the applicable law, we affirm.

On May 9, 1991, appellant Norma J. Sheely was operating her vehicle eastbound on Route 30 in York County, Pennsylvania. At approximately 2:30 p.m., her vehicle collided with a vehicle being driven by appellee Mildred R. Beard. As a result of the accident, appellants contend that Ms. Sheely suffered serious orthopedic and psychiatric injuries. On February 3, 1992, appellants filed a complaint alleging that appellee was negligent and that her negligence was the sole cause of Ms. Sheely's injuries.[1] A jury trial was held on December 8 and 9, 1994. Appellants were represented by David C. Cleaver, Esquire. At this trial, appellee presented Dr. Fenichel's videotaped deposition testimony which was taken on November 8, 1994. Dr. Fenichel testified with a reasonable degree of medical certainty that Ms. Sheely did not suffer from a psychiatric disorder resulting from the May, 1991, automobile accident. Following the trial, the jury returned a verdict in favor of appellee, awarding appellants zero damages. Appellants filed a timely post-trial motion seeking a new trial. In their post-trial motion, appellants alleged that it was undisputed at trial that Ms. Sheely sustained orthopedic injuries, and, therefore, that an award of zero damages was against the weight of the evidence. The trial court agreed and granted appellants' post-trial motion for a new trial.

On October 2, 3 and 4, 1995, a second jury trial was held. Appellants were represented by Dale E. Anstine, Esquire. Prior to trial, appellee listed Dr. Fenichel as an expert medical witness and sent appellants a notice of deposition scheduling Dr. Fenichel's videotaped deposition for September 29, 1995. Appellee indicated that the deposition was scheduled for the purpose of obtaining rebuttal testimony. Appellee informed appellants that she would be introducing Dr. Fenichel's November 8, 1994, videotaped deposition testimony at the second trial. Appellants filed a motion in limine seeking to exclude Dr. Fenichel's November 8, 1994, videotaped deposition on the grounds that it was taken for purposes of the first trial only and that it contained impermissible hearsay. They also requested that Dr. Fenichel's September 29, 1995, deposition be excluded since she was not "requalified" as an expert. The trial court denied the motion. Following the trial, the jury returned a verdict in favor of appellants in the amount of $13,500.00. This was the amount of Ms. Sheely's orthopedic-related injuries. Believing that the jury improperly failed to consider Ms. Sheely's psychiatric injuries, appellants filed a timely post-trial motion seeking a judgment n.o.v. or, in the alternative, a new trial. By order dated June 24, 1996, the trial court denied the motion. This appeal followed.

■ Appellants' first contention is that the trial court erred in failing to grant a new trial since Dr. Fenichel's November 3, 1994, videotaped deposition was admitted improperly at the second trial.[2] Specifically, appel-

---

**1.** Ms. Sheely's husband, Phillip A. Sheely, filed a claim alleging loss of consortium.

**2.** We note that the admission of expert testimony is a matter for the discretion of the trial court and that the trial court's decision will not be overruled absent a clear abuse of discretion.

*Rafter v. Raymark Industries, Inc.,* 429 Pa.Super. 360, 632 A.2d 897 (1993). Moreover, an order refusing to grant a new trial will not be disturbed absent a manifest abuse of discretion or an error of law which controlled the outcome of the case. *Jistarri v. Nappi,* 378 Pa.Super. 583, 549 A.2d 210 (1988).

lants contend that the applicable statutory provisions do not permit depositions taken and filed in a former trial to be used in a subsequent, new trial. They also contend that the former deposition was inadmissible hearsay under 42 Pa.C.S.A. § 5917, which governs the admissibility of former testimony. Appellants concede that pursuant to 42 Pa.C.S.A. §§ 4017.1 and 4020(a)(5) a medical expert's videotaped deposition may be admissible at trial without regard to the expert's availability. However, appellants contend that before a medical expert's former deposition can be admitted at a subsequent, new trial the proponent of the expert is required to demonstrate that the expert medical witness was unavailable. Since appellee failed to prove that Dr. Fenichel was unavailable for the second trial, appellants argue, the former testimony exception to the hearsay rule was inapplicable to this case.

■ Assuming *arguendo* that the trial court erred in admitting Dr. Fenichel's former deposition, we do not find that a new trial is warranted. Appellants have failed to demonstrate that the trial court's error influenced the verdict or led to an incorrect result. *Naccarati v. Garrett,* 351 Pa.Super. 437, 506 A.2d 428 (1986). They have also failed to demonstrate that they were prejudiced by the error. *Naccarati, supra.* It is clear that Dr. Fenichel's November 3, 1994, videotaped deposition was lawfully taken and duly recorded in the former trial. It is also clear from the record that appellants' prior counsel had ample opportunity to cross-examine Dr. Fenichel at the November 3, 1994, videotaped deposition and that appellants' present counsel had ample opportunity to cross-examine Dr. Fenichel at the supple-

mental deposition which was held on September 29, 1995, just prior to the second trial. Aside from general, conclusory statements that they were prejudiced, appellants have failed to indicate how the error influenced the verdict or led to an incorrect result. Appellants have not indicated what further questions they would have desired to put forth to Dr. Fenichel or what testimony they expected to elicit if the trial court mandated the retaking of her videotaped deposition. Accordingly, a new trial is not warranted on this basis.[3]

■ Appellants' next contention is that a new trial is warranted since Dr. Fenichel was not qualified properly as an expert witness, and, therefore, she should have been precluded from testifying. Appellants do not dispute that Dr. Fenichel was qualified properly as an expert during her November 8, 1994, videotaped deposition. However, they contend that she should have been "requalified" during the September 29, 1995, supplemental deposition. Appellants have failed to prove, or even allege, that they were prejudiced by appellee's failure to "requalify" Dr. Fenichel, that the alleged error influenced the verdict or that it led to an incorrect result. *Naccarati, supra.* Accordingly, assuming *arguendo* that appellee was required to "requalify" Dr. Fenichel as an expert during the September 29, 1995, deposition, the error does not warrant a new trial.

■ Appellants' next argument is that a new trial is warranted since Dr. Fenichel's testimony taken at the first deposition should have been stricken since it contained impermissible hearsay testimony.[4] Specifically, appellants contend that during Dr. Fenichel's videotaped deposition she improperly testi-

---

**3.** Appellants assert, without citation to authority, that since they were represented by different counsel at the second trial they were prejudiced by the admission of Dr. Fenichel's former deposition. They specifically assert that the lower court failed to "recognize the inherent prejudice in permitting defense counsel to use Dr. Fenichel's former testimony when plaintiffs' present trial counsel was not present at that deposition and did not have an opportunity to cross-examine Dr. Fenichel at that time." Appellants' Brief p. 10. Appellants have not alleged that prior counsel inadequately cross-examined Dr. Fenichel at the first deposition or that present coun-

sel inadequately cross-examined Dr. Fenichel at the second deposition. As discussed previously, they have also failed to identify precisely what further questions they would have desired to put forth to Dr. Fenichel. As such, we cannot find, and our diligent research does not reveal, that the mere fact that appellants hired new counsel demands the award of a new trial.

**4.** "[H]earsay evidence is defined as in-court evidence of an out-of-court declaration, whether oral or written, which is offered to show the truth of the out-of-court assertion." *Rafter,* 632 A.2d at 899 (citation omitted).

fied regarding opinions and diagnoses made by Scott Cherry, M.D., Steven Shearer, Ph. D., and Letetia Pierce, M.D. They also argue that she impermissibly summarized the contents of the York Hospital Emergency Room's records and Ms. Sheely's family doctor's records.

We find that appellants' argument fails on several grounds. First, the core testimony from Dr. Fenichel, the testifying expert, was based on personal observation and first-hand analysis of the medical evidence. *Primavera v. Celotex Corp.,* 415 Pa.Super. 41, 608 A.2d 515 (1992). It is clear that Dr. Fenichel examined Ms. Sheely prior to trial and that the references made to the reports, opinions and diagnoses of other doctors formed only a minor portion of the data relied on by the testifying expert in forming her in-court conclusion. Moreover, as the following discussion will elaborate, there is a well-settled exception to the hearsay rule which permits experts to testify regarding reports of others. We find that the complained-of testimony fell within this established exception.

█ It is well-settled in Pennsylvania that a medical expert is permitted to express an opinion which is based, in part, on medical records which are not in evidence, but which are customarily relied on by experts in her profession. *Cohen v. Albert Einstein Medical Center,* 405 Pa.Super. 392, 592 A.2d 720 (1991). This exception to the rule against hearsay was adopted in Pennsylvania law in 1971 in *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971), and has been applied consistently since then. *See Primavera, supra.*

> [Moreover,] [w]hile the fact that a testifying expert may have based h[er] opinion, in part, on the diagnoses and opinions of other experts may impact the weight the jury assigns to h[er] ultimate opinion, this fact alone does not require exclusion. If the opinions expressed by other physicians are part of the type of material reasonably relied on by experts in the particular field, not only is disclosure of those opinions permissible, it is likely to be helpful to the

jury in assisting it in evaluating the testifying expert's opinion. Therefore, there is no basis in reason or case law to exclude opinions or diagnoses which are reasonably and traditionally relied upon by experts.

*Primavera,* 608 A.2d at 523.

As appellants correctly note, the above analysis depends on the expert actually acting as an expert and not as a mere conduit or transmitter of the content of an extrajudicial source. *See Allen v. Kaplan,* 439 Pa.Super. 263, 653 A.2d 1249 (1995), *appeal granted,* 541 Pa. 640, 663 A.2d 692 (1995); *Cooper v. Burns,* 376 Pa.Super. 276, 545 A.2d 935 (1988).

> An "expert" should not be permitted simply to repeat another's opinion or data without bringing to bear on it h[er] own expertise and judgment. Obviously, in such a situation, the non-testifying expert is not on the witness stand and truly is unavailable for cross-examination. The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise . . . of the sound discretion of the trial court. Where, as here, the expert uses several sources to arrive at h[er] opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted.

*Primavera,* 608 A.2d at 521 (citations omitted).

Dr. Fenichel testified that she relied on the reports, opinions and diagnoses of other doctors in rendering her opinion that Ms. Sheely did not suffer a psychological injury as a result of the automobile accident. She also specifically testified that such reports, opinions and diagnoses are ordinarily relied on by experts in her profession.[5] The mere fact that she testified as to other physicians' diagnoses and opinions does not require exclusion of her testimony. After Dr. Fenichel

---

5. Appellants do not dispute that the medical reports were customarily relied on by experts in Dr. Fenichel's profession.

described the other doctors' findings, she then testified that on the basis of the other doctors' reports, along with her own examination and a knowledge of the patient's medical history, Ms. Sheely did not sustain a psychological injury as a result of the automobile accident. As such, we conclude that the manner in which Dr. Fenichel, the testifying physician, utilized the reports, opinions and diagnoses of other experts as partial support and aid in arriving at and explaining the basis of her own opinion regarding Ms. Sheely's psychological condition exemplified the proper use of the *Thomas* rule and was not error. *Primavera, supra.* "In each instance in which the testifying expert referred to the reports, the references were part of the bases upon which she formed her opinion." *Id.* 608 A.2d at 523.[6]

■ Appellants also contend that Dr. Fenichel's first deposition should have been stricken since she relied on the police accident report and photographs from the accident scene in rendering her opinion. Appellants argue that police accident reports and photographs are not customarily relied on by psychiatrists, and, therefore, Dr. Fenichel's use of them was improper hearsay. In summarizing the materials reviewed in forming her opinion, Dr. Fenichel stated that she examined the police accident report and photographs in order to understand the severity of the accident. However, after a careful review of the record, we can find no mention of the contents of the police report or a description of the photographs. Accordingly, we find no basis for appellants' assertion of hearsay. *Rafter, supra* (expert witness' testimony regarding report made by another physician was not hearsay; witness only stated that he had examined the independent report but did not mention the contents of the report).

■ Appellants' next contentions are that a new trial is warranted since the jury's verdict was contrary to the weight of the

evidence, and that they are entitled to judgment n.o.v. since no two reasonable minds would disagree that the verdict was improper. Specifically, appellants allege that the only reasonable inference that can be drawn from the evidence is that Ms. Sheely sustained orthopedic and psychological injuries as a result of the injury, and, therefore, the jury's verdict, which compensated appellants only for Ms. Sheely's orthopedic-related injuries, was incorrect. We disagree.

■ "It is the province of the jury to weigh the competing evidence produced at trial, and that function should not be disturbed by the trial court." *Wagner v. Anzon, Inc.,* 453 Pa.Super. 619, 684 A.2d 570, 578 (1996). It is well-settled that "a new trial will not be granted on the basis of a weight of the evidence claim unless evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice." *Brindley v. Woodland Village Restaurant,* 438 Pa.Super. 385, 652 A.2d 865, 872 (1995). Moreover, "[a] new trial should not be granted upon a mere conflict in testimony." *Factor v. Bicycle Technology, Inc.,* 452 Pa.Super. 26, 680 A.2d 1178, 1180 (1996), *appeal granted,* 547 Pa. 459, 691 A.2d 459 (1997) (citation omitted). Judgment n.o.v. may be granted only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds would disagree that the verdict was improper. *Brindley, supra.* Where the evidence is sufficient to sustain the verdict, judgment n.o.v. should not be granted. *Trude v. Martin,* 442 Pa.Super. 614, 660 A.2d 626 (1995). Keeping these standards in mind, we find that the trial court's denial of appellants' motion for judgment n.o.v. and a new trial did not constitute a clear and palpable abuse of discretion or an error of law.

**6.** We note that we specifically find this case distinguishable from *Cooper v. Burns,* 376 Pa.Super. 276, 545 A.2d 935 (1988), upon which appellants rely heavily. The holding in *Cooper* regarding the hearsay objection was an example of an expert merely transmitting hearsay data rather than actually discussing the foundation and

sources for his own opinions. The testifying physician in *Cooper,* simply stated that "having essentially a second opinion is always helpful" and then disclosed the opinion to corroborate his own. *Cooper,* 545 A.2d at 940. *See Primavera, supra.* Clearly, such was not the case here.

The evidence presented by appellants was that Ms. Sheely sustained orthopedic and psychological injuries as a result of the automobile accident. At trial, appellants argued that Ms. Sheely sustained a head injury, and, as a result of that injury, "she started doing things that were different." N.T. 10/2/95 p. 31. To support their argument, appellants presented the testimony of three experts. John Joseph Danyo, M.D, an orthopedic surgeon, testified at length regarding Ms. Sheely's orthopedic injuries. He testified that he referred Ms. Sheely to a neurologist because she was experiencing headaches. He offered no testimony or opinion regarding Ms. Sheely's alleged psychological injury. Letitia Pierce, M.D., a psychiatrist, testified that she examined Ms. Sheely following the accident. She opined that Ms. Sheely suffered a brain injury as a result of the automobile accident. N.T. 10/2/95 pp. 165–166. She further opined that as a result of the brain injury Ms. Sheely suffered from memory loss and a seizure disorder. N.T. 10/2/95 pp. 170–171. Harold Kuhlman, a vocational evaluator, testified regarding Ms. Sheely's post-accident work capacity. He concluded that "she could not work and earn any money right now, and that would be a permanent condition." N.T. 10/2/95 p. 214.

Appellants' also presented the testimony of numerous family members. Ms. Sheely's brother-in-law, Ed Brunot, testified that Ms. Sheely's personality changed following the accident. He described her as a "fun-filled," strong, active person prior to the accident. N.T. 10/2/95 p. 83. He testified that following the accident she displayed an explosive temper, confusion and inability to perform simple tasks. N.T. 10/2/95 pp. 85–86. Ms. Sheely's brother, her two sisters, her daughter and her husband also testified that Ms. Sheely's personality changed following the accident. They concurred with Mr. Brunot's characterization of Ms. Sheely's personality before and after the accident. Ms. Sheely testified that since the accident she experiences headaches, her relationship with her husband has deteriorated and she has considered suicide. N.T. 10/2/95 pp. 136–137.

At trial, appellee did not dispute that Ms. Sheely suffered orthopedic injury and, during closing statement, appellee's counsel encouraged the jury to "fix an award in some reasonable amount for the undisputed abrasions, bruises and strains that Dr. Danyo, the bone and muscle doctor, came in and testified about." N.T. 10/4/95 p. 278. However, appellee argued that Ms. Sheely did not suffer a psychological injury. To support her argument, she presented the videotaped deposition testimony of Dr. Fenichel. As stated previously, Dr. Fenichel testified that she examined Ms. Sheely and read numerous physicians' reports. Taking these factors into consideration, she opined that Ms. Sheely did not suffer a psychological injury as a result of the automobile accident. She testified that the emergency room records indicated that Ms. Sheely suffered low back strain and some minor contusions after the accident but that she was released on the same day with no restrictions. She also testified that Ms. Sheely had a normal Electroencephalogram (EEG) [7] and a normal brain Magnetic Resonance Imaging (MRI) after the accident. The doctor further stated that in her opinion Ms. Sheely showed "some kind of assumption of an invalid status from the time of the accident but that the change in her performance was not related to the accident." Dr. Fenichel's Videotaped Deposition 11/18/94 p. 24. She further indicated that although Ms. Sheely claimed that she had memory problems and that she had impairments, those problems were not exhibited during her examination by Dr. Fenichel. Dr. Fenichel testified that Ms. Sheely had no difficulty in speaking spontaneously, in performing memory tests or in relating her life's history to the doctor. Dr. Fenichel's Videotaped Deposition 11/18/94 p. 24. Dr. Fenichel specifically disagreed with Dr. Pierce's conclusion that Ms. Sheely sustained a brain injury causing psychological disorder. Id. at 28. She also specifically disagreed with Mr. Kuhlman's conclusion that Ms. Sheely was unable to work. Id. at 29. Dr. Fenichel stated that she would not have placed any employment or recreational restrictions on Ms. Sheely's activities following the accident.

7. An EEG measures brain wave activity. The test aids physicians in diagnosing brain dysfunction, including seizures. Dr. Fenichel's Videotaped Deposition 9/29/95 p. 8.

*Id.* at 29. Based on Ms. Sheely's family doctor's medical records, Dr. Fenichel noted that many of the symptoms exhibited by Ms. Sheely since the accident, i.e., headaches and dizziness, were symptoms which she had exhibited prior to the accident. *Id.* at 31.

Based on the aforementioned testimony, the jury obviously chose to believe Dr. Fenichel's testimony that Ms. Sheely did not suffer from a psychiatric disorder. Given the competing evidence which was presented, it was for the jury to decide which expert to believe. We acknowledge that appellants presented ten witnesses and that appellee presented only one witness. However, the mere fact that appellants presented more witnesses does not require a finding that the jury's verdict in favor of appellee was contrary to the weight of the evidence or that the evidence was insufficient to sustain the jury's verdict. We also find that reasonable minds could disagree as to the outcome of the case. *Brindley, supra.* As such, the trial court properly denied appellants' request for judgment n.o.v. or, in the alternative, a new trial.

For all of the foregoing reasons, we affirm the lower court's judgment.

Affirmed.

CAVANAUGH, J. concurs in the result.