**Mark COLLINS and Maureen S. Collins, Appellees,**

v.

**Stephen A. COOPER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1999.

Filed Jan. 27, 2000.

William C. Stubits, Philadelphia, for appellant.

Thomas M. Holland, Philadelphia, for appellee.

Before POPOVICH, JOYCE and TAMILIA, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment of the Court of Common Pleas of Philadelphia County entered on January 28, 1999, which denied appellant's motion for a new trial. This timely appeal followed. Upon review, we vacate the judgment of the trial court in part, affirm in part and remand for a new trial as to Mark Collins' damages.

¶ 2 This matter stems from an automobile accident between appellant and appellees that occurred on the morning of June 5, 1996. While stopped behind traffic on I–76, appellees' vehicle was struck from behind by appellant's vehicle. As a result, appellees were treated for numerous injuries. Appellees' expert testified that appellee Mark Collins suffered post-traumatic cervical, thoracic and lumbosacral sprain and strain and right S1 radiculopathy. Appellees' expert testified that appellee Maureen Collins suffered post-traumatic cervical thoracic and lumbosacral strain and sprain and left C7 radiculopathy. Appellees' expert also testified that the injuries for both appellees were permanent. Moreover, the accident caused significant damage to both vehicles involved in the accident.

¶ 3 Appellant admitted liability, but the issue of damages was tried before a jury. On September 9, 1998, the jury returned a verdict in the amount of $30,000 for Mark Collins and $20,000 for Maureen Collins. These sums were later molded to $32,-999.38 and $21,999.58 to reflect delay damages. Appellant filed timely post-trial motions seeking a new trial that was denied by the judgment entered on January 28, 1999.

¶ 4 When assessing the trial court's denial of a motion for new trial, we apply a deferential standard of review. "The decision whether to grant or deny a new trial is one that lies within the discretion of the trial court." *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 841 (Pa.Super.1999). We will not overturn such a decision unless the trial court grossly abused its discretion or committed an error of law that controlled the outcome of the case. *Id.*

¶ 5 Herein, appellant asks the following:

1. WHETHER THE TRIAL COURT ERRED BY PROHIBITING DEFENDANT'S CROSS EXAMINATION OF PLAINTIFFS' EXPERT WITH ADVERSE MEDICAL TESTIMONY OF PLAINTIFFS' TREATING PHYSICIANS.

2. WHETHER THE TRIAL COURT ERRED BY INSTRUCTING THE JURY TO DISREGARD DEFENDANT'S ARGUMENT CONCERNING THE BIOMECHANICAL EXPERT.

3. WHETHER THE TRIAL COURT ERRED BY ADMITTING LAY WITNESS TESTIMONY OF A TEMPOROMANDIBULAR JOINT DYSFUNCTION DURING DIRECT EXAMINATION AND CLOSING ARGUMENT.

Appellant's brief, at 4.[1]

¶ 6 Appellant's first contention is that the trial court erred in prohibiting a "full and fair" cross-examination of appellees' expert witness with adverse medical testimony of appellees' treating chiropractor. Appellant further contends that it was erroneous for the trial court to make a similar ruling during closing arguments. We find no merit in this argument.

¶ 7 The scope and manner of cross-examination are within the trial court's discretion, and that discretion will not be disturbed absent its abuse or an error of law. *Commonwealth v. Wilson*, 538 Pa. 485, 506, 649 A.2d 435, 445 (1994). "The right of cross-examination includes the right to examine the witness on any

1. Appellant's questions are renumbered for   editorial convenience.

facts tending to refute inferences or deductions arising from matters the witness testified to on direct examination." *Rafter v. Raymark Industries, Inc.,* 429 Pa.Super. 360, 632 A.2d 897, 900 (1993) (quoting *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369, 1371 (1984)). The scope of cross-examination involving a medical expert includes reports or records which have not been admitted into evidence but which tend to refute that expert's assertion. *Id.*

¶ 8 At trial, appellant presented no witnesses. Appellees presented a physiatrist as an expert witness. Appellees' expert witness testified about his examination of appellees and opined about their injuries. On cross-examination, appellant directly referenced portions of reports made by appellees' treating chiropractor who did not testify and whose reports were not in evidence. Appellant asked appellees' expert to read several portions of the chiropractor's reports. The portions of the chiropractor's reports tended to contradict part of appellees' expert's testimony. The trial court instructed appellant's counsel regarding the scope of cross-examination as follows:

> You cannot introduce medical records without calling in the physicians involved, as I'm sure you know. You may, however, use exhibiting medical records to ask the doctor whether he has considered those reports, whether he agrees with them, and what part they had in his determination.

(N.T. 9/8/98, at 177–178).

¶ 9 Herein, the trial court properly determined the scope of appellant's cross-examination. Although appellant asserts that he was unable to cross-examine appellees' expert witness adequately, the record reveals numerous instances in which appellant elicited contradictory testimony during cross-examination by referencing the chiropractor's reports. Appellant referenced four different documents authored by the chiropractor before the trial court properly instructed appellant that he was

not allowed to introduce the chiropractor's reports into evidence during the cross-examination of appellees' witness. Moreover, the following excerpt from the proceedings demonstrates that appellant was able to determine from appellees' expert whether the chiropractor's reports would alter his opinion regarding appellees' injuries:

> Court: Counsel, are you going to ask the witness whether these documents are changing [the expert witness'] opinion about anything? Is that the purpose of—
>
> Counsel: I—
>
> Court: Just a minute. Is that the purpose of this examination? Please answer yes or no.
>
> Counsel: Yes, it is.
>
> \* \* \* \* \* \*
>
> Court: Doctor, having now noted certain aspects of the reports of these other physicians, does it in any way affect your previously announced opinion concerning your diagnosis and prognosis of the patient involved?
>
> Expert: No, it does not. My position is the same—my opinion is the same.

(N.T. 9/8/98, at 177–179).

¶ 10 "It is well-settled in Pennsylvania that a medical expert is permitted to express an opinion which is based, in part, on medical records which are not in evidence, but which are customarily relied on by experts in her profession." *Sheely v. Beard,* 696 A.2d 214, 218 (Pa.Super.1997). This rule which permits experts to express opinions relying on extrajudicial data depends on the circumstances of each particular case and demands the exercise of the trial court's sound discretion. *Primavera v. Celotex Corp.,* 415 Pa.Super. 41, 608 A.2d 515, 521 (1992). "An 'expert' should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment." *Id.* "Where ... the expert uses several sources to

arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted." *Id.*

¶ 11 Herein, appellees' expert stated that he "reviewed" the chiropractor's reports. When asked by the trial court what influence the chiropractor's reports had upon his opinion, the expert responded,

> "[i]n this particular matter—I mean, this particular report, it has none. I examined [appellees] myself and made my own determinations upon their clinical symptoms."

(N.T. 09/08/98, at 182). Since appellee's expert did not rely upon the chiropractor's reports in reaching his opinion, the information contained in the chiropractor's reports is not the type of out-of-court data that falls within the exceptions enunciated in the cases of *Sheely, supra,* and *Primavera, supra.*

■ ¶ 12 Thus, the proper use of the chiropractor's reports was through the manner of cross-examination permitted by the trial court. Appellant was not permitted to offer the chiropractor's reports into evidence since they constituted an extrajudicial opinion not subject to either direct or cross-examination. The jury would have been unable to assess the chiropractor's credibility or his qualifications. These reports were properly limited to being used on cross-examination for the purposes of refuting the expert's testimony and causing the expert to change his opinion. Therefore, the trial court properly

asserted its discretion by instructing appellant concerning the proper scope of cross-examination.

■ ¶ 13 Appellant's next allegation that the trial court erred by instructing the jury that the law in Pennsylvania does not recognize biomechanical experts is waived. Appellant cites to no authority and only includes bald allegations of error. Where an appellant has failed to cite any authority in support of a contention, the claim is waived. *See Bunt v. Pension Mortg. Associates, Inc.,* 446 Pa.Super. 359, 666 A.2d 1091, 1095 (1995).

¶ 14 We now address appellant's final contention that the trial court erred by allowing appellee Mark Collins to testify on direct examination that a dentist diagnosed him with temporomandibular joint dysfunction ("TMJ"). The dentist neither testified, nor were the dentist's reports admitted into evidence. In addition, appellees' expert witnesses did not supply testimony that supported the TMJ diagnosis. Appellant made a timely objection that the trial court overruled. During appellees' closing, appellees' counsel referred to the TMJ diagnosis.[2] Appellant argues that the trial court's ruling erroneously allowed a lay witness to provide an expert opinion.

■ ¶ 15 In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party. *Romeo v. Manuel,* 703 A.2d 530, 532 (Pa.Super.1997) (citing *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa.Super. 218, 496 A.2d 762, 765 (1985)).

---

**2.** Appellees contend that appellant's failure to object to appellees' counsel's reference to the TMJ diagnosis during their closing argument resulted in the waiver of this entire issue. However, the record clearly shows that appellant made a timely objection to the reference made to the TMJ diagnosis during appellee's direct examination and included this objection in a timely filed post-trial motion. (N.T. 9/8/98, at 127–128). Since the trial court overruled this objection and admitted the TMJ testimony into evidence, it would have been redundant for appellant to repeat his already overruled objection during closing argument. See Pa.R.C.P. 227.1; *see also Brown v. Philadelphia Tribune Co.,* 447 Pa.Super. 52, 668 A.2d 159, 162 (1995) (to properly preserve an issue for appeal, a party must make a timely objection at trial and raise the issue on post-trial motions). Appellant properly preserved this issue for appeal.

"Appellant must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court." *Id.* Based upon such showing, our only remedy is to grant a new trial. *Id.* "When improperly admitted testimony *may* have affected a verdict, the only correct remedy is the grant of a new trial." *Bucchianeri v. Equitable Gas Co.,* 341 Pa.Super. 319, 491 A.2d 835, 838–39 (1985) (citation omitted).

¶ 16 "We are mindful that competent relevant evidence having probative value is generally admissible and this court on appeal will accord a large measure of discretion to the trial court regarding its admission or exclusion." *In Re: Joseph R. Barbour,* 733 A.2d 1286, 1287 (Pa.Super.1999) (citing *Engle v.. West Penn Power, Co.,* 409 Pa.Super. 462, 598 A.2d 290 (1991)). We have long held that lay witnesses may testify about the apparent physical condition of a person. *In Re: Joseph S. Barbour,* 733 A.2d at 1288. However, lay witnesses are barred from testifying to the existence or nonexistence of a disease or disorder, the discovery of which requires the training and experience of a medical expert. *Id.* (citing *Travellers Ins. Co. v. Heppenstall Co.,* 360 Pa. 433, 61 A.2d 809 (1948)). Herein, we find that it was erroneous to allow appellee Mark Collins to testify about his TMJ diagnosis.[3]

¶ 17 We now address the issue of whether appellant was substantially prejudiced by the admission of this testimony. The trial court concluded that substantial prejudice to appellant was avoided since the jury never received evidence concerning the TMJ, and the trial court provided an instruction to the jury. In addition, the trial court stated that appellant suffered no substantial prejudice since the jury verdicts were for the respective amounts of $30,000 and $20,000. The trial court found that this amount of damage represents a conservative view of the injuries by the jury since there was extensive evidence concerning pain and suffering. We disagree with the trial court's assessment concerning the harm suffered by appellant.

¶ 18 Initially, we note that the trial court overlooked the fact that its decision to overrule appellant's objection to the TMJ testimony admitted this testimony into evidence. Next, we assess the following jury instruction that supposedly avoided any substantial prejudice stemming from the disputed testimony:

> It is your recollection of the evidence upon which you must rely during your deliberations and not mine nor that of the lawyers ... The speeches of the lawyers which you have just heard are not evidence as such. However, in deciding the case, you should carefully consider the evidence as you remember it in light of the various reasons and arguments presented by each lawyer. You should be guided by each lawyer's arguments to the extent they are supported by the evidence and insofar as they help you in applying your own reason and common sense ... You are to consider only the evidence which has been presented here in open court and your evaluation of that evidence. You are not to rely upon supposition or guess, or on matters not in evidence ...

(N.T. 9/9/98, at 42–44). We do not agree that this instruction did anything to affect the amount of prejudice suffered by appellant from the TMJ testimony. First, this instruction was made after the attorneys' closing arguments and nowhere near the disputed testimony. When appellee Mark Collins spoke of the TMJ, the trial court overruled appellant's objection and said nothing of the testimony in question. Second, the trial court's instruction was very general and made no specific reference to the improperly admitted testimony. Finally, by instructing the jury that "[y]ou are to consider only the evidence which has been presented here in open court and

---

**3.** We note that the trial court has acknowledged that its allowance of the disputed testimony into evidence was erroneous.

your evaluation of that evidence", the judge essentially informed the jury that it was entitled to consider the TMJ testimony during deliberation.

¶ 19 We now address the trial court's conclusion that appellant was not harmed by the TMJ testimony due to its conclusion that the jury verdict was conservative. Even if we were to accept the trial court's assessment of the verdict as conservative, there is no certain way to determine the effect the TMJ testimony had upon the jury's calculation of damages. At this stage of our analysis, we find it worthy to note that appellees' expert's testimony revealed that appellees suffered similar injuries; yet, Mark Collins received monetary damages that exceeded those of Maureen Collins by $10,000. This disparity in damages reveals the possibility that Mark Collins' testimony regarding his diagnosis of TMJ may have influenced the jury's verdict. As stated above, our proper remedy when erroneously admitted testimony may have affected the verdict is to grant a new trial. *See Bucchianeri, supra.* This case was tried solely to determine the amount of damages to be awarded to appellees, and Mark Collins' diagnosis of TMJ was admitted into evidence. To determine the relevance this diagnosis played during the jury's deliberations is beyond the ken of this court. Since the testimony in question may have affected the amount of the verdict, we are constrained to grant a new trial as to the damages of Mark Collins.[4]

¶ 20 For the foregoing reasons, we vacate the judgment in part, affirm in part and remand for a new trial consistent with the opinion of this court.

¶ 21 Judgment vacated in part and affirmed in part. Remanded for new trial as to the damages of Mark Collins. Jurisdiction relinquished.

4. We note that appellees did not assert claims for loss of consortium in their complaint.