J-A28033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| QUADINA BONILLA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JEANES HOSPITAL, | |
| Appellee | No. 193 EDA 2015 |

Appeal from the Judgment Entered February 4, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 05051 January Term, 2012

BEFORE: GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED: January 21, 2016**

Appellant, Quadina Bonilla, appeals from the judgment entered on February 4, 2015, in favor of Jeanes Hospital in this medical malpractice case. After careful consideration, we reverse and remand this matter for a new trial.

The trial court summarized the factual and procedural history of this case as follows:

> [Appellant] brought this medical malpractice action against [Jeanes Hospital] alleging that the care provided to her in its emergency department on February 23, 2010 was negligent in that its staff failed to diagnose and treat cauda equina syndrome, resulting in permanent neurologic deficits. [Appellant] alleged, *inter alia*, that [Jeanes Hospital's] emergency department staff breached the standard of care in failing to properly diagnose and treat after she reported pelvic numbness, the lack of sensation when urinating, and the lack of feeling the urgency to urinate.

At trial, [Jeanes Hospital] argued that [Appellant] never made such a report and that they did not breach the standard of care. They also presented a surveillance video which showed [Appellant] climbing the steps of her home while carrying shopping bags and climbing in and out of an automobile she was operating to pump gas. Armed with this video and her medical records, [Jeanes Hospital] suggested alternatively that [Appellant] either did not have cauda equina syndrome at the time she was seen by emergency department personnel, or that if she did have such ailment, its onset had occurred prior to her presentation and that any opportunity to address this malady had already passed. Furthermore, [Jeanes Hospital] argued that [Appellant] had significantly exaggerated the extent of her disability.

[Jeanes Hospital] relied to a significant extent on the fact that on February 21, 2010, two days prior to her presentation to Jeanes Hospital, [Appellant] had visited St. Luke's Hospital with complaints of pain in her low back that were almost identical to the complaints of low back pain that she alleged to have made in [Jeanes Hospital's] emergency department on February 23, 2010. All of the parties agreed that cauda equina syndrome was a condition that required immediate surgical intervention within hours of [Appellant] experiencing symptoms, and that if immediate intervention did not occur, the condition would become permanent and irreversible. [Appellant] was ultimately not able to meet her burden of proof by a preponderance of evidence that [Jeanes Hospital's] proven negligence was the factual cause of the harm suffered by [Appellant]. Critical to the jury's determination was [Jeanes Hospital's] argument that if [Appellant] did have cauda equina syndrome, it had become irreversible by the point in time that she presented to its emergency department on February 23, 2010.

During trial, the parties became involved in an evidentiary dispute that formed the factual nexus for the appeal filed by [Appellant]. This dispute concerned a document that the parties referred to as the Extended Discharge Instruction. Counsel for [Appellant] admitted to receiving a summary of the discharge instruction during discovery; however, he alleged that the Extended Discharge Instruction was not produced in response to his request for production of documents. As a result of review for this appeal, Counsel for [Jeanes Hospital] agreed that it failed to produce the Extended Discharge Instruction in the proper

course of discovery. . . . [Jeanes Hospital's] Counsel admitted that he had not personally provided the document in question but believed [Appellant's] Counsel had received the documents through some other means and, therefore, sought to introduce the Extended Discharge Instruction and offer it into evidence before the jury.

Trial Court Opinion, 5/8/15, at 1-3.

After discovering that the extended discharge instructions had not been disclosed prior to trial, Appellant made a motion for a mistrial on the basis that introduction of this document "severely" prejudiced Appellant's case. N.T., 6/11/14, at 84. The trial court denied that motion for mistrial. *Id.* at 93-94. The jury issued a verdict in favor of Jeanes Hospital on June 20, 2014. Appellant filed a post-trial motion on June 30, 2014, seeking a new trial. By order entered November 26, 2014, the trial court denied Appellant's post-trial motion. Appellant filed a notice of appeal on December 26, 2014.[1] Pursuant to a *praecipe* for entry of judgment, judgment was entered on February 4, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

---

[1] Appellant's notice of appeal indicates that she is appealing from the November 26, 2014 order denying her post-trial motion. We note that an order denying post-trial relief is interlocutory and generally not appealable unless it is reduced to judgment. *Dominick v. Hanson*, 753 A.2d 824, 825 n.1 (Pa. Super. 2000). However, judgment in this case was entered by order dated February 4, 2015; therefore, we will consider the appeal filed after the entry of judgment. *Id.*; Pa.R.A.P. 905(a). This date is properly reflected in the appeal paragraph.

>  Whether the trial court's order denying post-trial relief should be vacated, with instructions to enter a mistrial as previously requested by [Appellant], because Jeanes' use of the Phantom Discharge Instructions subjected [Appellant] and her experts to "trial by ambush," violated the Pretrial Order, and allowed Jeanes to unfairly attack the credibility of [Appellant] and her counsel. The trial court's refusal to declare a mistrial in response to these circumstances was "manifestly unreasonable."

Appellant's Brief at 2-3.

Appellant argues that Jeanes Hospital failed to produce the extended discharge instructions, which she refers to as the "phantom discharge instructions," during discovery but then inappropriately introduced them at trial. Appellant's Brief at 18. Appellant maintains that upon discharge from Jeanes Hospital, she was presented with summary discharge instructions, which she refers to as her "actual discharge instructions." *Id.* at 22. These discharge instructions were produced by Jeanes Hospital during discovery and were Bates-stamped, along with all trial exhibits to which the parties stipulated, prior to trial. *Id.* at 22. Appellant's "actual discharge instructions" did not include a warning to seek immediate medical attention if certain symptoms presented themselves, but such warning was included on the extended discharge instructions. *Id.* at 23.[2] Appellant asserts that Jeanes Hospital improperly presented these extended discharge instructions during trial, despite the admission by Jeanes Hospital's counsel that he had

_____

[2] Appellant maintains that the fact that her signature is on the "actual discharge instructions," but not on the extended discharge instructions, is proof that she received only the summary discharge instructions. *Id.* at 26.

not provided the extended discharge instructions to Appellant during discovery or at any time prior to trial. *Id.*

Furthermore, Appellant contends that the extended discharge instructions were directly related to the issue of causation. Appellant's Brief at 19-20. In his closing, Jeanes Hospital's counsel argued that Appellant was responsible for her injuries due to her failure to seek medical attention for symptoms despite receiving detailed extended discharge instructions directing her to seek such immediate medical attention. *Id.* at 19-20. Appellant maintains that Jeanes Hospital invited the jury to conclude that Appellant was to blame for having cauda equina syndrome as a result of failing to obey these detailed discharge instructions. *Id.* at 21. Thus, Appellant argues that introduction of this evidence unfairly prejudiced her position. *Id.*

Additionally, Appellant posits the use of these undisclosed extended discharge instructions negatively impacted the testimony of Appellant's expert witness, Physician's Assistant ("PA") Johanna Moore. Appellant's Brief at 21. Based on the extended discharge instructions presented to her during cross-examination, PA Moore conceded that the instructions satisfied the standard of care required of Jeanes Hospital and that her previous opinion to the contrary was "wrong." *Id.* at 21, 29. Appellant contends this concession and reversal of expert opinion negatively impacted her case. *Id.* at 21, 29. Thus, Appellant maintains that she was prejudiced by

introduction at trial of the extended discharge instructions and, accordingly, is entitled to a new trial. *Id.* at 20-21.

Before reaching the merits of Appellant's issue, we must first address whether Appellant has waived her claim. The trial court concluded that Appellant waived this claim by failing to object to Jeanes Hospital's counsel's introduction of the extended discharge instruction at trial and provided the following explanation for its decision:

> This [c]ourt refused to grant a mistrial and denied [Appellant's] motion for post-trial relief because she failed to make a timely specific objection to the introduction of the Extended Discharge Instruction at trial.
>
> * * *
>
> [Appellant's] motion to preclude the Extended Discharge Instruction and the motion for mistrial were made at a point in the trial where few viable, realistic options were available other than to give a curative instruction and provide [Appellant] with the opportunity to offer rebuttal evidence. This [c]ourt was not involved in the discovery process, and it knew nothing about [Jeanes Hospital's] production of the various discharge instructions. By the time [Appellant] brought this matter to the attention of this [c]ourt, there was no way to preclude the content of the Extended Discharge Instruction because its content had been placed before the jury without objection on June 10th during the cross-examination of [Appellant] and Dr. Weihl. The discharge instruction was again introduced without a clear specific objection to its content on June 11th during the cross-exam of Johanna Moore, PA-C. This [c]ourt was unable to prevent what had already occurred; it was impossible to preclude what the jury had already seen and heard.
>
> In all fairness, this [c]ourt could not grant [Appellant's] motion for mistrial because this case was in its fourth day of trial and there was no showing of intentional misconduct on the part of [Jeanes Hospital]. [Jeanes Hospital's] Counsel averred that any failure on their part to produce the Extended Discharge

Instruction was inadvertent. It would have been unfair to force [Jeanes Hospital] to incur the expense and inconvenience of a second trial in a situation where [Appellant] completely failed to object until after the content of the discharge instruction was placed into evidence.

Trial Court Opinion, 5/8/15, at 8-9 (internal citation omitted).

This Court has provided the following explanation with regard to waiver on this basis:

In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction [. . .] one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa. Super. 2000) (internal citations omitted).

As noted, the trial court asserted that the content of the extended discharge instructions was placed before the jury on June 10, 2014, during the cross-examination of Appellant and one of Appellant's expert witnesses, Dr. Weihl, without objection. A review of the transcript reveals that instead of Jeanes Hospital's counsel physically producing the extended discharge instructions during examination of these witnesses, Jeanes Hospital's counsel simply referred to the content of a set of discharge instructions. Specifically, defense counsel questioned Appellant as to whether she remembered getting

"discharge instructions from Jeanes Hospital." N.T., 6/10/14, at 68. Appellant agreed that she had received discharge instructions. *Id.* at 68-70. As noted, however, the discharge instructions to which counsel referred were not presented to Appellant for her review. *Id.*

Jeanes Hospital's counsel also questioned Appellant's expert, Albert Weihl, M.D., about what he described as "very, very detailed extended instructions" Appellant received upon discharge from Jeanes Hospital. N.T., 6/10/14, at 191. Dr. Weihl testified that he was aware that Appellant received instructions upon her discharge from Jeanes Hospital. *Id.* Again, defense counsel did not present the discharge instructions to Dr. Weihl for review during this line of cross-examination. *Id.* at 191-192.

Because neither Appellant nor Dr. Weihl was physically presented with the discharge instructions to which defense counsel was referring, Appellant's counsel and the witnesses had no opportunity or reason to view the instructions Jeanes Hospital's counsel had referenced. As such, the discharge instructions as referenced by Jeanes Hospital's counsel during cross-examination of these two witnesses could be interpreted to have been references to the discharge instructions Appellant received upon discharge. Therefore, we cannot conclude that it was clear to the witnesses, the jury, or Appellant's counsel that by referring to "discharge instructions," defense counsel was referring to the extended discharge instructions, as opposed to the summary instructions Appellant admitted receiving upon discharge from

the hospital. As a result, we cannot agree with the trial court that Appellant's counsel waived his objection to introduction of the extended discharge instructions because he failed to object to reference of these instructions during cross-examination of Appellant and Dr. Wiehl.

The first time the extended discharge instructions were physically introduced was on the third day of trial during cross-examination of Appellant's expert witness, PA Johanna Moore. N.T., 6/11/14, at 53. The record reflects that during cross-examination of PA Moore, Jeanes Hospital's counsel showed her the extended discharge instructions. *Id.* When shown a page of the extended discharge instructions, PA Moore indicated that she had not seen that page before.[3] N.T., 6/11/14, at 53. Appellant's counsel questioned where that page was located in the medical record. *Id.* Jeanes Hospital's counsel indicated it was from the discharge instructions. *Id.* at 54. Appellant's counsel further asked if the document was Bates-stamped,

_____

[3] This discharge instruction included the following statement:

> Seek immediate medical attention if you have numbness, tingling, weakness or problems with your use of your arms or your legs, you experience severe back pain not relieved with medications, there is a change in bowel or bladder control, you have increasing pain.

N.T., 6/11/14, at 56.

and defense counsel responded that it was not.[4] *Id.* The court directed defense counsel to show Appellant's counsel the document, and then directed Jeanes Hospital's counsel to proceed. *Id.* Jeanes Hospital's counsel continued with a few more questions, at which point, Appellant's counsel stated, "Objection, Your Honor." *Id.* at 55. The trial court overruled the objection. *Id.* at 56.

After the court dismissed the witness, Appellant's counsel indicated to the court that he wanted to "put something on the record." *Id.* at 78. At that point, Appellant's counsel indicated that the discharge instructions shown to the witness had not been produced during discovery. *Id.* at 79. The trial court questioned Appellant's counsel as to why he did not ask for a sidebar so that the issue could have been addressed. *Id.* at 79. Appellant's counsel indicated that he was not certain that the document had not been produced until he had an opportunity to review the voluminous record. *Id.* at 79.

Given the surrounding circumstances, we conclude that the basis of Appellant's counsel's objection was apparent. As soon as the document was provided to PA Moore, Appellant's counsel questioned the source of the document and why it was not Bates-stamped. The basis of the objection was apparent to the trial court as evidenced by the trial court's failure to

---

[4] The parties had stipulated to the exhibits to be used at trial and had the documents Bates-stamped. N.T., 6/11/14, at 84.

inquire as to the basis of Appellant's objection before overruling it. N.T., 6/11/14, at 55-56. Thus, under the circumstances of this case, we decline to find that Appellant waived this claim. Accordingly, we are constrained to conclude that the trial court erred in determining that Appellant failed to preserve this issue.

Thus, we shall address the merits of Appellant's claim. In reviewing a trial court's decision to deny a request by a party for a mistrial, we will reverse only if the trial court committed an abuse of discretion or legal error in denying the request. *Gorski v. Smith*, 812 A.2d 683, 712-713 (Pa. Super. 2002).

> In reviewing a trial court's denial of a motion for a new trial, the standard of review for an appellate court is as follows:

>> It is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

>> * * *

>> Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

> Moreover, our review must be tailored to a well-settled, two-part analysis:

>> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then

determine whether the trial court abused its discretion in ruling on the request for a new trial.

*Gurley v. Janssen Pharms., Inc.,* 113 A.3d 283, 288–89 (Pa. Super. 2015).

With regard to discovery disputes, we have explained:

Preliminarily, we note the "'[t]he purpose of the discovery rules is to prevent surprise and unfairness and to allow a fair trial on the merits.'" Pennsylvania Rule of Civil Procedure 4019 provides for sanctions if a party fails to provide discovery. "The decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court." When a court refuses to impose sanctions, we must review the evidence to determine whether the court abused its discretion.

*Dominick v. Hanson*, 753 A.2d 824, 826 (Pa. Super. 2000) (internal citations omitted). According to Pa.R.C.P. 4019, a trial court may "make an appropriate order" if a party "fails to make discovery or to obey an order of court respecting discovery." Pa.R.C.P. 4019(a)(1)(viii). "[T]he decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court." *Philadelphia Contributionship Ins. Co. v. Shapiro*, 798 A.2d 781, 784 (Pa. Super. 2002). When a court refuses to impose sanctions, we must review the evidence to determine whether the court abused its discretion. *Dominick*, 753 A.2d at 826. This Court has held that when a party has failed to produce evidence during discovery, an appropriate sanction is prohibiting admission of the evidence at trial. *Duncan v. Mercy Catholic Med. Ctr. of Southeastern Pa.*, 813 A.2d 6, 12 (Pa. Super. 2002).

During discovery in this case Appellant requested any documents related to Appellant's medical treatment at Jeanes Hospital. Appellant's post-trial motion, Exhibit D (Letter, 6/24/10); Exhibit E (Letter, 7/27/10); and Exhibit F (Letter, 8/12/10); Appellant's first set of interrogatories, at ¶¶ 37, 43. Appellant also requested that Jeanes Hospital list and identify all exhibits and documents it intended to use at trial. Appellant's first set of interrogatories at ¶ 48. Jeanes Hospital answered, indicating that it had produced a complete record of Appellant's hospital records. Exhibit H, Appellant's interrogatories (first set), with Jeanes Hospital's answer, at ¶ 43. It further reserved the right to supplement its answer to the interrogatory asking for identification of documents or evidence to be produced at trial. *Id.* at ¶ 48. However, it is undisputed that the extended discharge instructions used by Jeanes Hospital on the third day of trial were not provided to Appellant during discovery or at any time prior to trial.[5] Thus, admission of these extended jury instructions at trial violated the purpose of the discovery rules, which is to "prevent surprise and unfairness and to allow a fair trial on the merits." *Dominick*, 753 A.2d at 826. Accordingly, we

---

[5] During argument on Appellant's post-trial motion, Jeanes Hospital's counsel admitted that he did not produce the extended discharge instructions to Appellant's counsel. N.T., 10/30/14, at 54-55. Jeanes Hospital's counsel alleged: "As a matter of fact, I didn't have the extended instructions until the morning [Appellant] testified." *Id.* at 55.

conclude that the extended discharge instructions should not have been admitted at trial.

This determination, however, constitutes only part of the requisite analysis. We must also determine whether admission of this evidence prejudiced Appellant. "It is axiomatic that 'the…admission of evidence, even if erroneous, is not considered a ground for a new trial where no harm or prejudice has resulted.'" ***Duncan***, 813 A.2d at 12.

> In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party. Appellant must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court. Based upon such showing, our only remedy is to grant a new trial. When improperly admitted testimony **may** have affected a verdict, the only correct remedy is the grant of a new trial.

***Collins v. Cooper***, 746 A.2d 615, 619-620 (Pa. Super. 2000) (internal citations and quotation marks omitted) (emphasis in original).

In this case, we are constrained to conclude that the improperly admitted extended discharge instructions indeed may have affected the verdict. As the trial court identified, defense counsel referred to the extended discharge instructions in his cross-examination of two of Appellant's witnesses. Reference to "discharge instructions" was confusing in that there were two separate sets of discharge instructions, which fact came to light after these witnesses testified. Thus, reference to "discharge instructions" had been made throughout trial without distinction between

those that Appellant admitted she actually received, and those extended discharge instructions that were not produced by Jeanes Hospital. There was no way to go back and clarify the witness's testimony or the jury's understanding regarding the different discharge instructions.

Furthermore, Jeanes Hospital's counsel posited that Appellant arguably caused her injuries by failing to heed the warning to seek immediate medical help as stated on the extended discharge instructions. Jeanes Hospital's counsel made the following argument during his closing:

> I'm going to suggest to you that the truth in this case is that the responsibility for Ms. Bonilla's injuries, the problem does not lie with Jeanes Hospital. Her problems, her disc was not caused by Jeanes Hospital. The conduct of Jeanes Hospital did not increase the risk of harm. The case presented by [Appellant] when you take out all of the frills, you stop nicking around the edges and you focus on the real issues, the real medicine, confirms what we have said all along from day one.
>
> [Appellant] did not come to Jeanes Hospital with Cauda Equina Syndrome. [Appellant] never made complaints of bladder problems, saddle anesthesia, or the inability to feel the urgency to urinate to anyone at Jeanes Hospital or before as she claims.
>
> Still, [Appellant] has somehow tried to manufacture a case to develop a theory against the very emergency medicine staff that made the correct diagnosis, instituted appropriate course of treatment, made appropriate standard of care recommendations.
>
> All [Appellant] had was back pain with radiculopathy. The sad reality is [Appellant] is a very poor historian. She has also shown a pattern and history of not following recommendations. That's the truth.
>
> I'm not picking on [Appellant], but it is a fact. We know she was discharged from Jeanes Hospital with **detailed discharge instructions**. You saw them. Her true symptoms,

Cauda Equina did not become apparent, by her own sworn deposition and her own sworn trial testimony until several days after she left Jeanes Hospital. The testimony is that she developed increased pain, total numbness from the waist down and total urinary incontinence around February 28th.

That was the moment. That was what the record says. Despite this, she didn't seek medical attention. She didn't call 911. She didn't get any help from anyone. She told us that the reason that she didn't do that is because she had an appointment with Dr. Weinik on March 2nd. That's just incredible.

We heard that term subjective and objective. You may remember my example, I had with Dr. Noble yesterday. I'm not going to repeat it, but [Appellant] provided a subjective history on March 2nd at Temple. There's no doubt she's a poor historian.

There was no consistency in her history, no reliability in much of what she had to say. That's [Appellant's] standard of care. Is it negligence? I don't know. That's up for you to decide. Did it cause or contribute to her ultimate injury? I suggest that it did.

N.T., 6/18/14, at 52-55 (emphasis added).

In light of Jeanes Hospital's argument that Appellant caused her injuries by not seeking immediate medical help, introduction of the extended discharge instructions directing Appellant to seek medical attention immediately if she experienced certain symptoms, and Appellant's failure to do so, may have affected the verdict. Thus, Appellant was prejudiced by introduction of and reference to the extended discharge instructions.

Additionally, Appellant's expert witness PA Moore's concession that her prior opinion that the hospital had not met the required standard of care had been erroneous, based on her review of the extended discharge instructions,

- 16 -

may also have affected the verdict. Although the trial court denied Appellant's motion for a mistrial, it did acknowledge the damage done to Appellant's case by this concession:

> [T]hat specific document that you confronted Ms. Moore with, I'm not sure that [Appellant] was confronted with that document.
>
> We have a little conundrum here. [Appellant's counsel] said he never received that document. [Jeanes Hospital was] able, unfortunately, to secure what might be considered a major concession that [Jeanes Hospital] might not have been entitled to because the assumption by Ms. Moore, when she made that concession, is that [Appellant] had, in fact, received that document and we don't know that to be true.
>
> So, how do I uncook that apple? I'll give you some time to think about it. Again, I'm not suggesting that you did anything wrong. However, if [Appellant] never received that document, then Ms. Moore's concession was inappropriate and you are not entitled to that concession if [Appellant's counsel's] assertion is true.

N.T., 6/11/14, at 82.

Furthermore, we cannot agree with the trial court's conclusion that the admission of the extended discharge instructions was irrelevant to the jury's finding on the issue of causation. The trial court explained that:

> Although the jury found [Jeanes Hospital] was negligent in its provision of care to [Appellant], it also found that this negligence did not cause [Appellant] any harm. [Appellant] objected to the introduction of the Extended Discharge Instruction during the cross-examination of her liability expert, and the Extended Discharge Instruction was primarily relevant to the issue of [Jeanes Hospital's] negligence which was decided in [Appellant's] favor. Therefore, any error committed by this [c]ourt on this issue should be considered harmless because the evidence at issue was not relevant to the issue of causation.

- 17 -

Trial Court Opinion, 5/8/15, at 10-11.

While we agree that the jury found Jeanes Hospital negligent in its provision of care to Appellant, we cannot agree with the trial court's conclusion that admission of the extended discharge instruction was irrelevant to the issue of causation. Indeed, the jury concluded that Jeanes Hospital's negligence did not cause Appellant any harm. However, it is possible that the jury's determination on this issue was influenced by its belief that Appellant was the cause of her injuries for failing to follow the instructions to seek immediate medical help. Thus, we conclude that the admission of the extended discharge instructions was relevant to the issue of causation. Accordingly, improper admission of the evidence was not harmless error and resulted in prejudice to Appellant.

While impossible to discern exactly the impact use of this evidence had on the jury's verdict, we are constrained to conclude that improper admission of this evidence **may** have influenced the jury. As such, the trial court abused its discretion in failing to grant a new trial. ***Collins***, 746 A.2d at 620 ("When improperly admitted testimony **may** have affected a verdict, the only correct remedy is the grant of a new trial.")(emphasis in original).

We note the trial court's position that any prejudice was cured by the court's action of providing the jury with a copy of the extended discharge instruction along with a curative instruction addressing the discovery dispute. Trial Court Opinion, 5/8/15, at 7. The trial court also offered to

allow Appellant the opportunity to take the stand for a second time to testify that she never received the extended discharge instructions, but Appellant's counsel declined that offer. ***Id.***

Despite the trial court's attempts, we cannot agree that these steps cured the prejudice to Appellant's case. The curative instruction was not sufficient to clarify the confusion created throughout trial regarding the "discharge instructions" and the fact that there were two separate sets of discharge instructions, only one of which included the warning for Appellant to seek immediate medical care. Additionally, while we need not comment upon Appellant's counsel's strategic decisions, we cannot agree that if Appellant had taken the stand to clarify the issue regarding the extended discharge instructions, such action would have been sufficient to remedy the prejudice caused to Appellant by introduction of the extended discharge instructions. Accordingly, we cannot agree that the trial court's curative attempts negate the need for a new trial.

Judgment reversed. Case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/21/2016</u>