473 A.2d 1369

**Barbara S. KEMP, Administratrix of the Estate of Martin Kemp, Deceased, Appellant**

v.

**Donald QUALLS, M.D., Stanley B. Steinberg, M.D., Mieczsaew Lopusniak, M.D., and Lankenau Hospital.**

Superior Court of Pennsylvania.

Argued Sept. 6, 1983.

Filed Feb. 24, 1984.

Reargument Denied May 8, 1984.

Petition for Allowance of Appeal Denied Aug. 21, 1984.

320

Morton B. Wapner, Philadelphia, for appellant.

James J. McCabe, Jr., Philadelphia, for Qualls and Steinberg, appellees.

William H. Pugh, IV, Norristown, for Lopusniak, appellee.

Ralph L. Hose, Ardmore, for Lankenau Hosp., appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Plaintiff-Appellant, Barbara S. Kemp, instituted the instant action in trespass in the lower court claiming that the Defendant-Appellee physicians and hospital were negligent in failing to diagnose and treat a condition which allegedly caused the death of Martin Kemp, the Appellant's decedent.[1] A trial was held before a jury which returned a verdict in favor of the Appellees. The Appellant now appeals the lower court's subsequent denial of her motion

---

1. Defendant, Stanley B. Steinberg, M.D., was dismissed from the case by agreement of all counsel during proceedings before the lower court. Thus, he is not involved in the present appeal.

for a new trial. On this appeal, she claims that the lower court erred in several evidentiary rulings at trial.

The pertinent facts of record show that on February 7, 1971, Martin Kemp was admitted as an inpatient in the Appellee, Lankenau Hospital, while receiving care from Dr. Qualls, another Appellee. The admission and treatment by the physicians was for low back pain suffered by the decedent. During the course of the admission, Dr. Qualls brought Dr. Lopusniak, also an Appellee, into the case as a consulting specialist in connection with the decedent's high blood pressure problem. The decedent was subsequently discharged from Lankenau Hospital on February 28, 1971. On March 6, 1971 he was admitted to Cooper Medical Center in Camden, New Jersey, where he died only six days later as the result of pulmonary emboli.

Two of the Appellant's contentions on this appeal involve the admission and use at trial of certain medical records resulting from the decedent's stay at the Cooper Medical Center. During the course of the trial, the Appellant called Dr. Theodore Rodman as a medical expert. Dr. Rodman expressed the opinion that the Appellees Qualls and Lopusniak acted negligently in failing to diagnose the decedent's pulmonary emboli. In response to questions, Dr. Rodman stated that he had reviewed the records of the Cooper Medical Center before arriving at his opinion. During the course of cross-examination of Dr. Rodman, counsel for Appellees Qualls and Lopusniak questioned the witness concerning matters in the Cooper Medical Center records in an apparent effort to demonstrate that several physicians who had treated the decedent, subsequent to treatment rendered by the Appellees, had failed to diagnose pulmonary embolism as the cause of decedent's symptoms. It appears that in this effort the Appellees' cross-examination was intended to demonstrate the obscurity of the decedent's symptoms and the difficulty of diagnosing pulmonary embolism.

The Appellant first contends that the Cooper Medical Center records, which contain diagnostic opinions of

doctors who treated the decedent at that facility, were not relevant to show Appellees' compliance with a reasonable standard of medical care. In reviewing this claim, we must initially recognize that the information from the Cooper Medical Center records was elicited during cross-examination of the Appellant's medical expert. It is well-established that the scope and limits of cross-examination are within the trial court's discretion and the court's rulings thereon will not be reversed in the absence of a clear abuse of discretion or an error of law. *Gatling v. Rothman,* 267 Pa.Super. 566, 407 A.2d 387 (1979). Further, it is clear that the right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters the witness testified to on direct examination. *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 420 A.2d 514 (1980). Every circumstance relating to the direct testimony of an adverse witness or relating to anything within his or her knowledge is a proper subject for cross-examination, including any matter which might qualify or diminish the impact of direct examination. *Commonwealth v. Britton,* 251 Pa.Super. 335, 380 A.2d 807 (1977).

We find that the lower court did not abuse its discretion in allowing Dr. Rodman to be cross-examined concerning the diagnoses by physicians at the Cooper Medical Center which were contained in the hospital records he had reviewed in preparing for his own testimony at trial. Dr. Rodman testified on direct examination that decedent's symptoms, as exhibited at Lankenau Hospital, were a "red flag" which indicated that decedent was suffering from pulmonary emboli. The Cooper Medical Center records lacked any diagnosis of pulmonary emboli by physicians who treated the decedent subsequent to the treatment rendered by the Appellees. Obviously, such evidence would have tended to diminish the impact and reliability of Dr. Rodman's assertion that the symptoms of pulmonary emboli should have been absolutely clear to a physician exercising

reasonable care in the circumstances then present. We must reject the Appellant's contentions that the Appellees relied on the Cooper medical records to affirmatively establish their own compliance with a reasonable standard of care. It is clear that the Appellees' counsel used these records instead to refute Dr. Rodman's assertion that the Appellees were negligent in failing to diagnose the problem as the cause of decedent's symptoms.

■ The Appellee next argues that the lower court should not have allowed cross-examination involving the Cooper Medical Center records because they allegedly constituted inadmissible hearsay. However, our review of the record shows that the documents in question were not offered to prove the truth of the matters asserted therein, in this case the specific diagnoses reached by the treating physicians at the Cooper Medical Center. Instead, as explained above, the correctness of the diagnostic opinions of the doctors from Cooper Medical Center was not made an issue in the case, but rather the opinions were used for purposes of cross-examination to elicit evidence of the difficulty of diagnosing a pulmonary embolism condition. We agree with the lower court which concluded that in these circumstances the records in question were probative and relevant. Accordingly, we reject the claims that the records in question should have been excluded from evidence by the lower court because they constituted inadmissible hearsay.

The Appellant next argues that the lower court erred in refusing to admit certain testimony proffered through witness Daniel Brown. The excluded testimony consisted of statements purportedly made by the decedent to Dr. Lopusniak in a telephone conversation, while the decedent was in the presence of Mr. Brown, and statements made by the decedent to Brown which purported to repeat what Dr. Lopusniak had stated to the decedent during the same telephone conversation. After an objection to Mr. Brown's testimony was sustained by the court, the parties had discussions in chambers about the testimony of the witness. The Appellant's counsel related to the court that he wanted

to ask questions as to Mr. Brown's discussions with the decedent, and explained he planned to ask these questions to determine the "state of mind" of Mr. Kemp with regard to his condition, for two reasons. First, he stated that he wanted to show that the decedent had a fear of impending death, allegedly a documented symptom in cases of pulmonary embolism. Second, he asserted that he wanted to show Mr. Kemp's reaction to his purported inability to obtain satisfactory answers from Dr. Lopusniak, a situation which allegedly caused the decedent to consult other doctors. In an offer of proof, Appellant's counsel asserted that the witness would testify that he dialed a telephone call to Dr. Lopusniak on behalf of the decedent, and after the call was completed by Mr. Kemp, the witness discussed with the decedent what had been discussed during Mr. Kemp's conversation with the doctor. The following colloquy in the record is germane:

COUNSEL FOR APPELLEE: (Interposing) You said [Mr. Brown] discussed with him, with Dr. Lopusniak, or with Mr. Kemp?

COUNSEL FOR APPELLANT: With Mr. Kemp. Mr. Kemp, after the conversation was over, had discussed with him what, in effect, Dr. Lopusniak said, which was, "There is nothing more I can do for you. See me Friday."

COUNSEL FOR APPELLEE: Now, who is talking to Dr. Lopusniak?

COUNSEL FOR APPELLANT: The phone call was made by Mr. Brown. Mr. Brown is not going to say that he was listening in to the conversation, or anything like that.

THE COURT: He dialed the phone?

COUNSEL FOR APPELLANT: He dialed the phone and got Dr. Lopusniak's office on the telephone; or perhaps got Dr. Lopusniak on the phone. He then was in the room while Mr. Kemp was talking to Dr. Lopusniak. And immediately thereafter, Mr. Kemp stated to this witness that the doctor told him that, "There is nothing

more I can do. See me Friday." Or words to that effect. "I don't know what else I can do for you." And he said, "I'm disgusted. I think I had better get another doctor." The lower court allowed the Appellant to direct questions to Brown concerning the decedent's fear of impending death, and also permitted the witness to relate that he placed a call to Dr. Lopusniak's office and then gave the telephone to the decedent, but sustained all objections to the testimony of the witness concerning the words stated to him by the decedent concerning the decedent's alleged telephone conversation with Dr. Lopusniak.

▆▆▆▆ There can be no question that the testimony available from Mr. Brown concerning his conversations with the decedent with respect to any alleged statements by Dr. Lopusniak during the phone call would constitute hearsay. Hearsay evidence is defined as in-court evidence of an out-of-court declaration, whether oral or written, which is offered to show the truth of the out-of-court assertion. *Carney v. Pennsylvania Railroad Company*, 428 Pa. 489, 240 A.2d 71 (1968). Such evidence is clearly inadmissible unless it falls within a recognized exception to the hearsay rule. *Baldino v. Castagna*, 308 Pa.Super. 506, 520, 454 A.2d 1012, 1019 (1982). The Appellant concedes that any testimony by the witness concerning what the decedent reported to him that Dr. Lopusniak had said would clearly constitute "double hearsay". Appellant's only argument regarding the admissibility of such testimony was that it falls under the exception to the hearsay rule relating to admissions against interest by a party. Not only do we find a lack of merit in that assertion, as the witness did not himself hear Dr. Lopusniak make any statements, but we find that this argument was not raised before the lower court at the time the testimony in question was offered. In such circumstances, such a claim was clearly waived, and we cannot consider it on appeal.

▆▆▆▆ As to the testimony of Brown concerning what he overheard the decedent say during the telephone call, the Appellant argues that such testimony should have been

admitted under the "present sense impression" exception to the hearsay rule.[2] We would examine the merits of that claim but for our recognition of the Appellant's apparent abandonment of the arguments raised in the lower court to justify admission of the testimony, and the clearly new argument in support of admission raised for the first time on this appeal. As noted above, Appellant sought to be permitted to question Mr. Brown regarding the decedent's statements of a fear of impending death, a purported symptom of pulmonary embolism. This examination was permitted by the lower court, despite objections by the Appellees. Therefore, we are left with Appellant's only other argument to the lower court regarding this subject. Appellant urged that he be permitted to have Mr. Brown relate his conversations with the decedent to show the latter's purported inability to obtain satisfactory answers from Dr. Lopusniak, which allegedly caused him to seek other medical attention. Despite having taken this position in the lower court, the Appellant, in her brief to our Court, offers the following new rationale to support her alleged right to question Mr. Brown regarding his conversations with the decedent on the day in question: "The statements which Mr. Brown overheard Mr. Kemp tell Dr. Lopusniak were not being admitted to show the truth of what they asserted but simply to show that Dr. Lopusniak had been *informed* of the complaints

2. Federal Rule of Evidence 803, which lists exclusions from the hearsay rule, defines a hearsay statement falling under the present sense impression exception as: "A Statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." In *Commonwealth v. Farquharson,* 467 Pa. 50, 68, 354 A.2d 545, 554 (1976), the Court explained the following with respect to a statement alleged to be a declaration of present sense impression:

"We are also not persuaded that this testimony can qualify as a declaration of present sense impression. Under this exception the necessity for the presence of a startling occurrence or accident to serve as a source of reliability is not required. The truthfulness of the utterance is dependent upon its spontaneity. It must be certain from the circumstances that the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes. Restated, the utterance must be 'instinctive, rather than deliberate'. *Commonwealth v. Coleman,* 458 Pa. 112, 117, 326 A.2d 387, 389 (1974)."

and symptoms of which Mr. Kemp was suffering. This of course, was relevant to show whether Dr. Lopusniak responded with reasonable care in his treatment of this patient." Our review of the record discloses no mention of the argument by the Appellant that the testimony was being offered for such a purpose. Further, the argument raised in the lower court to support the admission of the testimony in issue is not maintained on this appeal. Thus, the question of whether or not the testimony could have qualified as a present sense impression exception to the hearsay rule is of no consequence. The Appellant has abandoned the arguments for relevancy offered below and seeks to rely on new arguments for the first time on this appeal. It is well-established that a party may not successfully advance a new and different theory of relief for the first time on appeal, while failing to assert on appeal other grounds which were submitted for the same purpose in the lower court. *Morgan v. Sbarbaro,* 307 Pa.Super. 308, 453 A.2d 598 (1982); *In re S.C.,* 280 Pa.Super. 539, 421 A.2d 853 (1980). Therefore, we must reject the Appellant's contention that the lower court erred in refusing to permit Mr. Brown to testify as to Mr. Kemp's statements relating to the telephone call to the office of Dr. Lopusniak.

The Appellant's final argument is that the lower court erred when it permitted the Appellee Qualls to use Dr. John Lachman as an expert witness. The Appellant served pre-trial interrogatories upon the Appellee Qualls to obtain information as to the identities and qualifications of any expert witness expected to be called to testify at trial. It is argued that the undisputed late notice received by the Appellant with regard to Dr. Lachman should justify the award of a new trial.

The record shows that Dr. Lachman's identity as a potential expert witness was not provided to the Appellant's counsel until April 11, 1980, three days prior to the first day of trial in the case. Further, it appears that Dr. Lachman's qualifications, in the form of his *curriculum vitae,* were

not provided by the Appellee to the Appellant until April 23, 1980, the day before Dr. Lachman was called to testify.

While the late disclosure of the identity or qualifications of an expert is to be condemned, the mere occurrence of such a circumstance does not *per se* create grounds for a new trial. In *Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 399 A.2d 1095 (1979), a case cited by the Appellant, this Court declared that to preclude expert testimony, in the circumstance of late disclosure of information about him to the adverse party, is a drastic sanction, and unless necessary under the facts of the case, may be the basis for finding an abuse of discretion by the trial judge. Our Court also considered whether the sanction of preclusion of expert testimony should be granted, due to untimely response to pretrial interrogatories, in the case of *Royster v. McGowan Ford, Inc.*, 294 Pa.Super. 160, 439 A.2d 799 (1982). There it was stated: "... [A]ssuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as the result of a dilatory disclosure". 294 Pa.Super. at 169, 439 A.2d at 804.

In this case, it is apparent that the Appellant has not demonstrated any real prejudice flowing from the Appellee Quall's untimely disclosures of Dr. Lachman's identity and qualifications. The Appellant had thirteen days in which to investigate the reputation and purported expertise of the witness prior to his testimony. Moreover, the lower court expressly offered to accommodate any difficulty caused to Appellant's counsel by the late disclosures concerning Dr. Lachman. In light of these facts, we cannot hold that the lower court erred in refusing to exercise the serious sanction of precluding the witness from testifying at trial.

The order of the lower court is hereby affirmed.