J-A32024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KEVIN K. ROBINSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LLEM CORPORATION AND PINNACLE CAPITAL FUNDING, | |
| Appellees | No. 422 EDA 2014 |

Appeal from the Order Dated December 11, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2007 No: 1790

BEFORE:  PANELLA, OLSON AND FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 12, 2015**

Appellant, Kevin K. Robinson, appeals from the order dated December 11, 2013 in this action to quiet title.  We affirm.

The trial court set forth the facts of this case as follows:

> [Appellant] borrowed money on properties he owned at 1500 and 1615 West Tioga Street, Philadelphia 19140 from [LLEM Corporation ("LLEM")].  [Appellant] signed deeds in lieu of foreclosure that he agreed would be filed in the case of default.  In these transactions, Patrick Maruggi acted as an intermediary between [Appellant] and LLEM, securing the mortgages and deeds in lieu of foreclosure and sending copies to LLEM.  [Appellant] failed to pay as required. Maruggi filed the deeds in lieu of foreclosure, transferring ownership of the properties from [Appellant] to [] LLEM.

Trial Court Opinion, 1/29/2014, at 1-2 (footnotes omitted).

Thereafter, the following conveyances of the properties resulted:

> On April 29, 2005, 1500 West Tioga Street was deeded from [Appellant] to [LLEM], recorded May 7, 2005.   On

*Retired Justice specially assigned to the Superior Court.

September 13, 2006, this property was deeded to CK Investments, LLC ("CKI"), recorded March 16, 2007. Finally, CKI deeded this property to MDS Management Services, LLC ("MDS"), on November 24, 2008, recorded January 5, 2009.

On August 8, 2005, 1615 West Tioga Street was deeded from [Appellant] to Pinnacle Capital Funding, LLC ("Pinnacle"), recorded May 3, 2006. On September 13, 2006, Pinnacle deeded this property to CKI, recorded March 16, 2007. Finally, CKI deeded this property to MDS on November 24, 2008, recorded January 5, 2009.

***MDS Management v. Robinson***, 47 A.3d 1237 (Pa. Super. 2012)

(unpublished memorandum) at 2-3.

Procedurally, the case advanced as follows:

[Appellant] filed [a] quiet title action on May 18, 2007. The action was consolidated with two associated cases[, ejectment actions filed by CKI and MDS,] on July 3, 2010. [Following an appeal, this Court] directed that the [] quiet title action be tried before the associated consolidated cases. Accordingly, the matter proceeded to a nonjury trial on June 12 and 13, 2013. [The trial court] found for [] LLEM and against [Appellant], and restored the consolidated cases to the non-jury pool for trial pending appeal of the [trial court's] finding. [Appellant] filed a motion for post-trial relief on July 3, 2013. [Appellant] timely appeals the [trial court's] decision.

Trial Court Opinion, 1/29/2014, at 1 (unnecessary capitalization and footnote omitted).

On appeal, Appellant presents the following issues for our review:[1]

_____

[1] MDS, as the subsequent purchaser for value of the subject properties following the various conveyances as outlined above, has filed a brief in opposition to Appellant's appeal.

A. Whether the trial court committed [an] error of law and [an] abuse of discretion by denying [Appellant's] quiet title claim where [a] licensed attorney stole title and then conveyed it multiple times and another licensed attorney simultaneously represented both the initial conveyee and a subsequent conveyee and, while having knowledge of and making judicial admissions of the fraudulence and impropriety of the previous conveyances, obstructed their reversal, solely in the interest of the subsequent conveyee.

B. Whether the trial court abused its discretion and committed an error of law by finding Maruggi's initial conveyance of title to be valid while disregarding [Appellant's] presentation of clear and convincing evidence of fraudulence by Maruggi in performing [the] initial conveyance, including [the] initial purported conveyor and conveyee both giving unrefuted testimony that the conveyance was fraudulent, particularly where [the] trial court was aware of previous court rulings regarding the fraudulence of the Maruggi conveyances by the Philadelphia Court of Common Pleas, the Supreme Court of New York, and United States District Court for the Southern District of New York.

C. Whether the trial court abused its discretion and committed errors of law by denying [] LLEM's motion for leave of court to amend [its] answer, by which LLEM sought to replace the duplicitous answer to [Appellant's] quiet title complaint prepared and filed by [LLEM's] former attorney, Brian Wind, Esquire, who simultaneously represented [the] subsequent recipient of the stolen title, MDS [Management Services, LLC], which, to this day, continues to obstruct the return of title to the theft victims.

D. Whether the trial court abused its discretion and committed [an] error of law by its order denying [Appellant's] and LLEM's joint motion in limine to preclude the re-argument of matters already decided by [this Court], to limit the trial to resolving the validity of the first Maruggi conveyance, and to preclude the continued interference and obstruction by the third conveyee, MDS.

Appellant's Brief at 1 (unnecessary capitalization and parentheticals omitted).[2]

First, we examine Appellant's issues pertaining to evidentiary matters, before reviewing the other substantive issues presented. In his last issue presented, Appellant claims the trial court abused its discretion or committed an error of law by denying his motion *in limine* to preclude a handwriting expert from testifying at trial. ***Id.*** at 33. More specifically, Appellant contends that the trial court impermissibly allowed "third conveyee MDS" to present the testimony of a handwriting expert "two months after the close of discovery" to show that Appellant signed the deeds in lieu of foreclosure at issue herein. ***Id.*** at 33-34. Citing Pa.R.C.P. 4003.5 and related caselaw, Appellant contends that MDS violated the rules pertaining to the discovery of expert witnesses. ***Id.*** at 31-33. He claims "[i]t was clearly legal error for the trial court to accept evidence submitted by third conveyee MDS's hand-writing expert consisting of unlawfully notarized signatures[]." ***Id.*** at 34.

Our standard of review is as follows:

> Generally, a trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the

---

[2] We note that Appellant's arguments in his appellate brief do not correspond with the order in which the issues are presented.

foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Catlin v. Hamburg*, 56 A.3d 914, 922 (Pa. Super. 2012) (citation omitted).

We have previously determined:

[Pennsylvania] Rule [of Civil Procedure] 4003.5 governs the disclosure of an expert's facts and opinions otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial. The Rule requires a party to disclose his expert's opinion prior to trial via answers to interrogatories or by providing a report. The answers or report must be signed by the expert. Pa.R.Civ.P. 4003.5(a)(1)(b). Furthermore, if the identity of an expert witness is not disclosed, Rule 4003.5 authorizes sanctions, such as preclusion of the proposed expert's testimony. Pa.R.Civ.P. 4003.5(b). The sanction authorized by Rule 4003.5 is not mandatory. *Toogood v. Rogal*, 764 A.2d 552, 557 (Pa. Super. 2000). Rather, when a discovery violation occurs as a result of a failure to identify an expert witness, "the presiding court must balance the facts and circumstances of each case to determine the prejudice to each party." *Id.* The court considers the following factors:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Wolloch v. Aiken*, 756 A.2d 5, 13 (Pa. Super. 2000).

*Corrado v. Thomas Jefferson Univ. Hosp.*, 790 A.2d 1022, 1032 (Pa. Super. 2001) (parentheticals omitted).

"While the late disclosure of the identity or qualifications of an expert is to be condemned, the mere occurrence of such a circumstance does not *per se* create grounds for a new trial." **Kemp v. Qualls**, 473 A.2d 1369, 1374 (Pa. Super. 1984). The preclusion of expert testimony based upon the late disclosure of information is "a drastic sanction" and is within the trial court's discretion. **Id.** (citation omitted).

We turn now to the facts of this case. Upon remand from this Court, on September 21, 2012, the trial court issued a case management order and set the close of discovery for February 4, 2013. Upon review of the certified record, Appellant did not request expert discovery. On February 4, 2013, in its identification of trial witnesses and exhibits, MDS listed "William J. Ries to offer testimony related to the authenticity of signatures on relevant documents." MDS Identification of Witnesses and Exhibits, 2/4/2013, at 2, ¶ 1E. William J. Reis prepared a report dated March 3, 2013, which then was sent to Appellant on April 17, 2013. Appellant does not dispute that he received the report prior to trial. On May 16, 2013, Appellant filed a motion *in limine* "object[ing] to the purported handwriting expert report" and requested the trial court "preclude the report from being considered as evidence." Appellant's Motion in Limine, 5/16/2013, ¶ 14. Based upon these facts and the relevant law, we conclude that MDS identified its expert during discovery and sent Appellant a copy of the relevant expert report prior to trial. Thus, we discern no abuse of discretion in denying Appellant relief.

Moreover, we note that at all times, Appellant has challenged the authenticity of the deeds in lieu of foreclosure. In his amended complaint to quiet title, filed on March 8, 2009, Appellant maintained that the subject properties were fraudulently conveyed using "forged documents, purportedly executed by [Appellant], which were not in fact executed by [Appellant]." Amended Complaint, 3/8/2009, at ¶ 6. Appellant attached copies of the deeds at issue. Thus, Appellant's quiet title action put the authenticity of the documents squarely at issue. Certainly, Appellant cannot claim surprise that MDS produced an expert to defend against Appellant's assertion that he did not sign the deeds and loan documents in question. There was no reason why Appellant could not cure any purported prejudice by retaining his own expert to support his claim that he did not execute the deeds in lieu of foreclosure. Before the close of discovery, William J. Ries was specifically listed as a trial witness. There is no evidence that any party acted in bad faith in failing to comply with the trial court's discovery order. Accordingly, Appellant has not demonstrated prejudice. Hence, Appellant's claim lacks merit.

In his third issue presented, Appellant claims the trial court erred by denying LLEM's motion for leave to amend its answer following this Court's remand. Appellant's Brief at 6. More specifically, Appellant maintains that prior counsel for LLEM, Attorney Brian Wind, "disregarded [LLEM's] interests and direct instructions" because of his "simultaneous representation of competing parties with conflicting interests[]" when he filed the original

answer. *Id.* at 7. Appellant asserts that following this Court's remand, "Attorney Joseph DiTomo[] officially entered his appearance for LLEM and moved for leave of court to amend the [a]nswer [Attorney Wind] had filed to [the quiet title] complaint." *Id.* at 6. Appellant contends that the trial court erred by denying LLEM's request to amend.

Pennsylvania Rule of Civil Procedure 1033 provides in pertinent part that "[a] party ... by leave of court, may at any time ... amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new ... defense." Pa.R.Civ.P. 1033. Regarding amendment, this Court has previously determined:

> Pleadings may be amended at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, after judgment, or after an award has been made and an appeal taken therefrom. Our courts have established as parameter a policy that amendments to pleadings will be liberally allowed to secure a determination of cases on their merits. A trial court enjoys broad discretion in evaluating amendment petitions.
>
> Despite this liberal amendment policy, Pennsylvania appellate courts have repeatedly ruled that an amendment will not be permitted where it is against a positive rule of law, or where the amendment will surprise or prejudice the opposing party. The prejudice, however, must be more than a mere detriment to the other party because any amendment requested certainly will be designed to strengthen the legal position of the amending party and correspondingly weaken the position of the adverse party. The mere fact that the adverse party has expended time and effort in preparing to try a case against the amending party is not such prejudice as to justify denying the

- 8 -

amending party leave to amend by asserting an affirmative defense which has a substantial likelihood of success.

> All amendments have this in common: they are offered *later in time* than the pleading which they seek to amend. If the amendment contains allegations which would have been allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by the *time* at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed.
>
> Denial of a petition to amend, based on nothing more than unreasonable delay, is an abuse of discretion. The timeliness of the request to amend is a factor to be considered, but it is to be considered only insofar as it presents a question of prejudice to the opposing party, as by loss of witnesses or eleventh hour surprise.

*Capobianchi v. BIC Corp.*, 666 A.2d 344, 346-347 (Pa. Super. 1995) (internal citations, quotations and brackets omitted) (emphasis in original).

Upon review of the record, we recognize the following facts in deciding Appellant's amendment issue. Appellant commenced the quiet title action in May 2007. With leave of court, Appellant filed an amended complaint on March 8, 2009. LLEM filed its original answer in March 2009. In November 2010, Attorney DiTomo, LLEM's newly retained counsel, entered his appearance, informed the trial court that Attorney Wind had been formally discharged by LLEM, and asserted, for the first time, that the subject properties had been conveyed fraudulently. In March 2012, this Court remanded the consolidated matters to the trial court for resolution of the

quiet title action. In November 2012, LLEM filed a motion to amend its answer and, in its accompanying memorandum of law, averred the following:

> The attorney who filed the answer to [Appellant's] quiet title complaint on behalf of defendant LLEM [], a certain Brandon Wind, Esquire, also simultaneously represented the plaintiff MDS in [MDS' ejectment action], in a clear conflict of interest.
>
> Despite having been instructed by his former client LLEM that the quiet title complaint [] was correct, and that LLEM's answers to that complaint should have been admissions, Attorney Wind instead filed answers denying the averments of [Appellant's] quiet title complaint.
>
> Unbeknownst to LLEM at that time, Attorney Wind's answers to [Appellant's] quiet title complaint were not designed to protect any interest of his then-client [], LLEM, but instead were designed to promote the interests of Wind's then-client in [the MDS ejectment action].
>
> In further pursuit of the interests [] MDS, while still counsel of record representing [] LLEM [in the quiet title action], Attorney Wind caused a writ of execution to be issued against [Appellant], despite knowing, as his client LLEM told him, that title was never validly conveyed to LLEM from [Appellant].
>
> During the course of the pre-appeal trial court litigation, both conflicting parties, [the ejectment action plaintiff], MDS, and [the quiet title action defendant], LLEM, replaced Attorney Wind with current counsel. Subsequently, Mr. Ralph Emproto, the President and sole shareholder of LLEM, reported Attorney Wind's conduct in this matter to the Disciplinary Board of the Supreme Court of Pennsylvania.
>
> Now that the matter has been through three appeals to the Superior Court, and remanded to the trial court, after more than five years of legal morass, resolution of the matter can be expedited by allowing current undersigned counsel of

> LLEM to amend the discredited and tainted answer submitted by LLEM's former counsel, Brandon Wind.

Memorandum of Law on Support of LLEM's Motion for Leave of Court to Amend Answer, 11/19/2012, at *3 (unpaginated).

Applying the applicable law to the facts of this case, we conclude that the trial court did not abuse its discretion in denying LLEM's motion to amend its answer. Appellant filed the quiet title complaint in 2007 and an amended complaint in 2009. In its original answer, filed in 2009, LLEM denied the substantive allegations in Appellant's quiet title action. Changing tact in 2012, LLEM sought to amend its answer to admit those same allegations it had previously denied. However, as previously discussed, LLEM retained new counsel in 2010 and discharged Attorney Wind. At that time, LLEM alleged that the properties had been fraudulently conveyed. But, it was not until November 2012, two full years later, that LLEM sought to amend its answer to the quiet title action. The bench trial proceeded in June 2013. Based on all of the foregoing, we conclude that LLEM's request to amend was untimely and caused prejudice to the opposing party due to eleventh hour surprise. LLEM did not offer justification as to delay in seeking amendment despite the passage of at least two full years from the time it first knew that it was changing its position. Attorney Wind was fired in 2010. LLEM later claimed that it was because he filed the original answer without authorization. However, LLEM never explained why it waited two years to file a motion for leave to amend. A complete turnabout in position six months prior to trial amounted to prejudice to MDS, an opposing party.

Accordingly, the trial court did not abuse its discretion in denying LLEM's motion for leave to amend its answer. Hence, Appellant's third issue as presented lacks merit.

Finally, in his first two issues as presented, Appellant argues that the subsequent conveyances of the property were fraudulent. Pointing to other unrelated civil cases, Appellant claims that Patrick Maruggi, the intermediary between Appellant and LLEM, has been found guilty of committing fraud in other instances. Appellant's Brief at 17, 29-30. Thus, he claims the trial court herein was required to apply the doctrine of collateral estoppel. *Id.* at 21. Appellant also points out that, in 2011, the Supreme Court of New York suspended Maruggi's license to practice law in that state. *Id.* at 17. These claims, however, are wholly extraneous to an action to quiet title.

On these issues, the trial court determined:

> Mortgages are contracts, and pursuant to the terms of the contract a mortgagee may foreclose on the mortgagor's property upon default. A deed in lieu of foreclosure obviates the need for a foreclosure sale. Here, [Appellant's] property was taken as payment for money borrowed when the deed in lieu of foreclosure was filed. Thus, the [trial court] denied [Appellant's] claim to quiet title.
>
> [Appellant's] post-trial motions argued that the [trial court] either misconstrued or refused to admit evidence of Patrick Maruggi's behavior. Whether or not Maruggi had authority to file the deed in lieu of foreclosure is legally irrelevant to the question presented in this quiet title action. Whether or not Maruggi had authority to file the deed in lieu of foreclosure may be relevant to the [consolidated] actions []. But it has no bearing on whether [Appellant] owns the property.

- 12 -

Trial Court Opinion, 1/28/2014, at 2-3 (footnote citations omitted).

As the trial court noted, this cause of action boils down to the mortgage agreement. Upon review, Appellant accepted loans on the properties and agreed to make payments on them. The agreement states that failure to repay the loans constitutes immediate default, thereby allowing Appellant's lenders to file the deeds in lieu of foreclosure. Appellant testified that he did not sign the deeds in lieu of foreclosure. *See* N.T., 6/12/2013, at 294. As previously discussed, however, the trial court properly permitted William Ries to testify as a handwriting expert at trial and he opined that the deeds in lieu of foreclosure bore Appellant's original signatures. *See* N.T., 6/13/2013, at 64-69. Appellant admitted that he received money on the loans and then defaulted. *See* N.T., 6/12/2013, at 281-285. Therefore, the subsequently filed deeds were proper. As such, Appellant's remaining appellate contentions regarding the subsequent conveyances are meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2015