J-A25031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL KOESTERER, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF VIRGINIA KOESTERER, DECEASED | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : : | No. 3221 EDA 2024 |
| THOMAS JEFFERSON UNIVERSITY HOSPITAL, THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC., JEFFERSON UNIVERSITY PHYSICIANS, JEFFERSON HEALTH, JEFFERSON HEALTH SYSTEM, RECONSTRUCTIVE ORTHOPAEDIC ASSOCIATES II, P.C., RECONSTRUCTIVE ORTHOPAEDIC ASSOCIATES, II, LLC, AND DAVID NAZARIAN, M.D. | : : : : : : : : : : : : : | |
| APPEAL OF: RECONSTRUCTIVE ORTHOPAEDIC ASSOCIATES, II, LLC, AND DAVID NAZARIAN, M.D. | : : : | |

Appeal from the Judgment Entered January 28, 2025
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 210201051

BEFORE: LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 27, 2026**

Reconstructive Orthopaedic Associates, II, LLC, and David Nazarian,

_____

* Retired Senior Judge assigned to the Superior Court.

M.D. (collectively, Appellants) appeal from the judgment entered[1] in favor of Daniel Koesterer, individually and as executor of the estate of Virginia Koesterer (Appellee), and against Appellants, in the aggregate amount of $2,903,030.82.[2] Appellants raise three issues for review, chiefly contending that the court erred as a matter of law and/or abused its discretion in failing to grant their request for a new trial given Appellee's allegedly improper use of a non-testifying expert's report on cross-examination. We affirm.

As cogently summarized by the trial court:

This is a medical malpractice action in which [Appellee] sued[, among others, Appellants] for allegedly rendering negligent care to [Appellee's] decedent mother, [Virginia], resulting in her death from a pulmonary embolism suffered on September 20, 2019. Specifically, [Appellee] argued that [Appellants] were negligent in failing to provide medication to [Virginia] that could have prevented deep vein thrombosis . . . and a potential pulmonary embolism following her hip surgery performed by Dr. Nazarian on September 18, 2019; they also argued that [Appellants] failed to

---

[1] Appellants filed their notice of appeal on November 25, 2024, construing the November 5, 2024 docket entry "correction to judgment index," an entry that followed the denial of their post-trial motion, as a final order ripe for appeal. *See* Appellants' Brief at 6 n.2. Nevertheless, this Court directed Appellants to praecipe the trial court to enter judgment on the underlying jury verdict. Appellants complied, and judgment was entered on January 28, 2025. Accordingly, we treat their appeal as timely filed after judgment was entered. *Cf. Landis v. Wilt*, 222 A.3d 28, 33 (Pa. Super. 2019) (treating premature notice of appeal filed from denial of post-trial motions as timely filed appeal from final judgment); *see also* Pa.R.A.P. 905(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[2] This figure is the sum of the jury's $2,500,000.00 award and the court's post-trial grant of $403,030.82 in delay damages.

- 2 -

adequately communicate with one another regarding which medication, if any, [Virginia] should take after the surgery to avoid the complications that ensued. At trial, in addition to medical-expert testimony, the jury heard lay-witness testimony from [both Appellee] and [Virginia's] daughter, Deirdre Koesterer Otto, briefly describing their mother's life and sharing their recollection of events immediately before and after her surgery. On the morning after closing arguments, the jury returned a verdict of $2,500,000 in favor of [Appellee]. On June 10, 2024, [Appellants] filed a [m]otion for [p]ost-[t]rial [r]elief seeking judgment notwithstanding the verdict, a new trial, and/or remittitur, which, after [a] hearing held on October 21, 2024, the [t]rial [c]ourt denied.

Trial Court Opinion, 2/13/25, at 2.

Appellants, after filing a timely notice of appeal and concise statement of errors complained of on appeal, *see* Pa.R.A.P. 1925(b), raise three issues before this Court:

1. Whether the trial court erred and abused its discretion in failing to grant [Appellants] a new trial, when, over [Appellants'] objections, [Appellee's] counsel improperly cross-examined . . . David Nazarian, M.D. and [Appellants'] expert, Joseph A. Bosco, M.D., with the expert report of [their] non-testifying expert, Ronald A. Sacher, M.D., causing substantial unfair prejudice to [Appellants]?

2. Whether the trial court erred and abused its discretion in failing to grant [Appellants] a new trial on weight of the evidence grounds, where the record, fairly reviewed, does not support the existence of an objective standard of care that was breached and caused [Appellee's] decedent's harm, particularly where [Appellee's] theory of liability would have required [Appellants] to oppose explicit instructions from [the] decedent's kidney doctor?

3. Whether the trial court erred and abused its discretion in denying [Appellants'] request for a new trial on damages, where the jury's awards were against the overwhelming weight of the evidence, unsupported by the record, and/or could only have been the product of prejudice, speculation, sympathy, and/or conjecture?

Appellants' Brief at 4 (suggested answers omitted).

Appellants first claim that Appellee repeatedly violated the rules that prohibit both the admission of hearsay and opposing party's expert opinions. These violations, assert Appellants, led to prejudice, and, notwithstanding the trial court's contrary conclusion, a new trial is therefore required.

We begin by noting that, having denied Appellants' motion for a new trial, such a decision "whether to grant a new trial, in whole or in part, rests in the sound discretion of the trial court." *Mendralla v. Weaver Corp.,* 703 A.2d 480, 485 (Pa. Super. 1997) (*en banc*). As an appellate court,

> [o]ur standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment[.]
>
> Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Schmidt v. Boardman*, 958 A.2d 498, 516 (Pa. Super. 2008); *see also* *Knowles v. Levan*, 15 A.3d 504, 508 n.4 (Pa. Super. 2011) ("[H]armless error must be considered when evaluating any claim for a new trial. . . . [H]armless error is defined as an error that does not affect the verdict.")

- 4 -

(citations omitted). ***But see Boyle v. Indep. Lift Truck, Inc.***, 6 A.3d 492, 494 (Pa. 2010) ("The award of a new trial is proper only where a trial court has committed an error of law or abuse of discretion which *may* have affected the verdict.") (emphasis added).

Here, Appellants contend that, through the court's admission of certain evidence, Appellee violated both hearsay and opposing party expert rules. ***Cf.*** Pa.R.E. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute."); ***Boucher v. Pennsylvania Hosp.***, 831 A.2d 623, 632 (Pa. Super. 2003) (establishing that one party cannot utilize the expert report of another party, given "an expert's proprietary interest in his own opinion[]"). The at-issue evidence is Appellee's use of a report authored by Appellants' non-testifying expert, Dr. Sacher, "to prove the truth of the matter asserted: that it takes several days for warfarin[3] to become effective." Appellants' Brief at 24. Notwithstanding his status as their own non-testifying expert, Appellants, *inter alia*, take issue with the fact that Dr. Sacher was not subject to cross-examination. In effect, despite his report being used against Appellants' own testifying witnesses on cross-examination, they were provided with no opportunity to challenge the veracity of Dr. Sacher's opinion.

Appellants suggest that the admission of Dr. Sacher's report impacted

_____

[3] Warfarin is the generic name for a prescription anticoagulant/blood thinner.

this case's "heart of the issue: whether ordering warfarin was within the standard of care." *Id.* at 26. Appellants then detail their belief that admission of this report led to attacks on the credibility of their own witnesses and further highlight how many times warfarin, and its brand name Coumadin, were mentioned throughout the course of the trial. *See id.* at 27. In effect, Appellants believe that the report's alleged effect on the jury's verdict is "self-evident[,]" necessitating a new trial. *Id.*

The trial court admits that it overruled Appellants' timely hearsay objections even though the Appellee's references to Dr. Sacher's report "did not meet exceptions to the hearsay rule." Trial Court Opinion, 2/13/25, at 3. However, the court reasoned that any prejudice suffered by Appellants was *de minimis* and "was not great enough to warrant an entirely new trial." *Id.* The court set forth the analysis of that issue as follows:

> With respect to the cross-examination of Dr. Nazarian, the [t]rial [c]ourt overruled [Appellants'] objection and permitted [Appellee] to ask Dr. Nazarian, "You would agree that Dr. Sacher says that warfarin does require several days to become therapeutic. Are you aware of that?" N.T. [Jury Trial], 5/29/24, at 83. [Doctor] Nazarian responded, "Yes. According to the INR, absolutely." *Id.* This was moments after Dr. Nazarian explained that "INR stands for international normalized units. It's a complex series of blood tests that basically shows how thin the blood is according to this test," and cautioned that it is "unclear" from literature on this subject whether warfarin requires several days to become therapeutic and whether INR accurately captures the therapeutic effect. *Id.* at 82.
>
> In other words, the response elicited from Dr. Nazarian by [Appellee] was that Dr. Nazarian was aware that the non-testifying Dr. Sacher believed warfarin to require several days to become effective – but this was not a belief wholeheartedly shared

by Dr. Nazarian, as indicated above. Thus, while the question from [Appellee] very briefly drew in an outside, hearsay opinion, it is hard to imagine that this momentary allusion would have a significant impact on the jury, particularly given that it was consistent with Dr. Nazarian's testimony *not* induced by hearsay. [Doctor] Nazarian specifically indicated, prior to being asked about Dr. Sacher's report, that there is a disagreement in the orthopedic field as to how long warfarin takes to become therapeutic, and whether its effect is accurately measured by INR. The fact that he disagreed with Dr. Sacher on these points merely highlights what Dr. Nazarian's non-hearsay testimony suggested, i.e., that some experts are more convinced by INR and the latency of warfarin than are others.

Furthermore, this was the only reference to Dr. Sacher's report at trial, other than [Appellee] and [Appellants] indicating on the first day that [Appellants] *might* call Dr. Sacher to testify, and [Appellee's] counsel asking essentially the same question of Dr. Bosco during his videotaped deposition, with the same response provided. Thus, minimal time was spent in even acknowledging that Dr. Sacher had written a report for this litigation, which also quells the concern, raised in [Appellants' post-trial motion for relief, which argues that] it "likely led the jury to believe that the moving defendants were hiding something by not calling Dr. Sacher to testify." This is not an idea that was in any way emphasized by [Appellee] and is not likely to have been seriously considered by the jury, given the circumstances just described.

*Id.* at 3-5 (footnotes omitted; record citations reformatted; emphases in original).

We agree with Appellants, and by extension the trial court, that Appellee's use of Dr. Sacher's report constituted hearsay absent any exception; thus, we must determine whether its use had, or could have had, any attendant effect on the verdict. **See Schmidt**, **supra**; **Boyle**, **supra**. Appellants aver that Appellee was "able to backdoor Dr. Sacher's opinion to demolish [their] theory of the case." Appellants' Brief at 27. Appellants also

posit that the jury could have made negative inferences as to why Dr. Sacher was not called to testify. ***See id.***

As this is an issue dealing with the permissible scope of cross-examination, we note that:

> The scope and manner of cross-examination are within the trial court's discretion, and that discretion will not be disturbed absent its abuse or an error of law. The right of cross-examination includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters the witness testified to on direct examination. The scope of cross-examination involving a medical expert includes reports or records which have not been admitted into evidence[,] but which tend to refute that expert's assertion.

***Collins v. Cooper***, 746 A.2d 615, 617-18 (Pa. Super. 2000) (citations and quotation marks omitted); ***see also Kemp v. Qualls, MD***, 473 A.2d 1369, 1371 (Pa. Super. 1984) ("right of cross-examination . . . includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters the witness testified to on direct examination").

After our review, as to Dr. Bosco, Appellants' testifying medical expert, Appellee could, in theory, utilize Dr. Sacher's report on cross-examination of Dr. Bosco "for the purposes of refuting" Dr. Bosco's testimony. As to Appellants' claims that Dr. Sacher's opinion was not subject to appropriate cross-examination, because Dr. Sacher did not testify at the trial, it is true that his opinions were inadmissible expert opinions. ***Collins***, 746 A.2d at 619 (stating that the appellant in ***Collins*** "was not permitted to offer the [non-testifying] chiropractor's reports into evidence since they constituted an

extrajudicial opinion not subject to either direct or cross[-]examination [because t]he jury would have been unable to assess the chiropractor's credibility or his qualifications[]").

Nevertheless, even if the rules espoused in **Collins** have been refined over time, **see, e.g.**, **Boucher**, 831 A.2d at 632 (outlining the general prohibition on a party's utilization of another party's expert report, but allowing such use for the following limited purpose: "[w]here an expert report is disclosed to another expert and reviewed by that expert, and then by his testimony the expert mischaracterizes that report, either explicitly or by implication, . . . basic fairness and the entitlements of cross-examination permit the disclosure of that report to the degree necessary to expose the mischaracterization by the testifying expert[]"),[4] we emphasize that, broadly, this case involves two passing, and refuted, references to Appellants' non-testifying expert.

Here, Dr. Bosco was asked, in the recorded deposition played for the jury at trial, whether he was aware that Dr. Sacher indicated that it took several days for warfarin's therapeutic value to take effect and whether Dr. Bosco agreed with that conclusion. **See** Memorandum of Law in Support of Post-Trial Motion, 9/23/24, at 5. Doctor Bosco indicated that he was unaware

_____

[4] Here, as later indicated, Dr. Bosco testified that he was not privy to Dr. Sacher's report prior to questioning.

of Dr. Sacher's conclusion and, once informed of that opinion, he further disagreed with it. ***See id.***

Also, Dr. Nazarian, in his status as a named defendant, did not testify as an expert. As such, the authority germane to cross-examination of a medical expert is inapplicable to Dr. Nazarian's testimony. Nevertheless, the singular reference to Dr. Sacher's report during Dr. Nazarian's cross-examination provided Dr. Nazarian the opportunity to place further emphasis on a point that he had just made regarding international normalized units. ***See*** N.T., 5/29/24, at 82-83 (Dr. Nazarian stating that Dr. Sacher's opinion was derived "according to" international normalized units, but that it is unclear, under current authority, whether it takes several days for warfarin to become therapeutic as "45 percent of the time in orthopedic literature when patients are treated with Coumadin after surgery they don't achieve what [is called] therapeutic INR" and "45 percent of the time the INR is not reflective of whether the medicine is working[]"). In effect, there could be no prejudice to Appellants because, as quoted *supra*, Dr. Nazarian's testimony demonstrated, already, the disagreement that existed "in the orthopedic field as to how long warfarin takes to become therapeutic, and whether its effect is accurately measured by INR." Trial Court Opinion, 2/13/25, at 4. Indeed, that testimony reflected Dr. Nazarian's view of a disagreement in the field, the emphasis was not the substance of Dr. Sacher's expert opinion.

From these two fleeting references, elicited through Dr. Bosco and Dr.

Nazarian's testimony, over the course of a several-day trial, where Appellee placed no further importance on Dr. Sacher's report or opinion, it cannot be said that the jury believed Appellants were "hiding something" by not calling him. Simply put, to the extent "forbidden testimony," predicated on Dr. Sacher's report, became a part of the record and was considered by the jury, it is entirely possible that such questioning ultimately inured to Appellants' benefit: Dr. Nazarian capably explained and refuted the contrary position, the ambiguity in the medical field regarding the aspect that Appellants claim went to "the heart of the issue" – the temporal and medically accepted effectiveness of warfarin. Appellants have not demonstrated the necessary prejudice to warrant a new trial where the answers to those questions effectively stated Dr. Nazarian's view of the issues, without any diminishment of his position on the same, and were consistent with other trial evidence. Given Dr. Nazarian's own testimony as to the "battle" over warfarin's use, which testimony the jury heard prior to Appellee's reference to Dr. Sacher, *see* N.T. Jury Trial, 5/29/24, at 82-83, it cannot be said that Appellee's two minor inquiries, which contained neither follow up questions nor attempts to elicit more information from Dr. Sacher's report,[5] affected, hypothetically or in actuality, the verdict.

_____

[5] In the case of Dr. Bosco, two questions were asked. However, as stated, *supra*, the second question was limited to whether he disagreed with the thrust of Dr. Sacher's warfarin-related conclusion, thereby, in effect, stating his own expert opinion on the issue.

Therefore, Appellants' claim necessarily fails.

As to Appellants' remaining two issues, both advancing discrete weight-of-the-evidence challenges, we note that Appellants only raised one corresponding "question" in their concise statement of errors complained of on appeal, as follows: "The trial court erred and abused its discretion in failing to grant [Appellants'] request for a new trial on weight of the evidence grounds where the jury's verdict in [Appellee's] favor on liability and damage was against the weight of the evidence and/or could have been the product of prejudice, speculation, sympathy and/or conjecture?" Going back even further, although it makes several generic references to weight of the evidence, their post-trial motion provides no further clarification as to one of the specific issues subsequently raised in their appellate brief, i.e., the record failing to demonstrate the existence of an objective standard of care breached that was causally related to Virginia's harm. However, under the auspice of remittitur, the post-trial motion does, as an apparent weight-based challenge, reference that the record fails to support the jury's award. **See** Post-Trial Motion, 6/10/24, at 6-7.

The court, in its evaluation of Appellants' concise statement, responded to their claim by treating it as a generic weight-of-the-evidence claim, considering the evidence presented by both sides, and finally concluded that no relief was due. **See** Trial Court Opinion, 2/13/25, at 5 ("[I]t is not clear to the [c]ourt which evidence [Appellants] believe weighed more strongly in

[Appellants'] favor than in [Appellee's] favor[.]"); *id.* at 6 ("The jury was presented with extensive expert testimony, from both sides, detailing the risks [Virginia] faced going into her surgery and the standard practices and procedures doctors and hospitals follow to minimize these risks. . . . [U]ltimately[,] the jury found the evidence to weigh in favor of [Appellee]."). In fact, Appellants admit that the court *never addressed* their now second issue, which deals with standard of care. **See** Appellants' Brief at 30 ("In its [Pennsylvania Rule of Appellate Procedure] 1925 opinion, the trial court does not address [the objective standard of care that Appellants breached], instead claiming that [Appellants] did not substantiate the prejudice, speculation conjecture and/or sympathy] they believe to have been so prevalent, which goes to damages, not liability.") (internal quotation marks and citation omitted).

Although Appellants, in their reply brief, vehemently argue that they preserved the standard of care issue through their non-specific "weight of the evidence" challenge, Appellants' Reply Brief at 19, the lack of further development, in either their post-trial motion or their concise statement, renders the issue waived for vagueness. **See, e.g.**, Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [concise statement] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Indeed, Appellants have cited to no authority establishing that simply raising a weight of the evidence claim gives them carte blanche to, for the first time on appeal,

specifically argue the issue of standard of care through the lens of a weight-based challenge.[6] ***See Kemp***, 473 A.2d at 1374 ("a party may not successfully advance a new and different theory of relief for the first time on appeal, while failing to assert on appeal other grounds which were submitted for the same purpose in the [trial] court"). As such, Appellants have waived review of their second claim. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); ***see also Dollar Bank v. Swartz***, 657 A.2d 1242, 1245 (Pa. 1995) ("An appellate court does not sit to review questions that were neither raised, tried, nor considered in the trial court. . . . It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court.").

Regarding their third question presented, a weight-of-the-evidence claim challenging the jury's "excessive" award of damages, Appellants' post-trial motion at least alludes to that issue. However, much like the infirmities

---

[6] Appellee suggests that Appellants' second claim, a contention that Appellee failed to demonstrate multiple elements of negligence, is actually a claim challenging the sufficiency of evidence, rather than the weight of the evidence, the latter of which requires a concession that the evidence presented was sufficient to satisfy the elements of the cause of action. ***See*** Appellee's Brief at 28 ("Appellants thus do not concede that [Appellee's] evidence was sufficient to satisfy the elements of negligence, instead arguing there was no evidence to support the jury's verdict. Appellants' second issue is therefore mischaracterized as a weight-of-the-evidence challenge."). Appellants have made no such concession. However, given our disposition, we do not reach this issue.

associated with Appellants' attempt to raise the standard of care argument on appeal, there is *absolutely no specificity* contained in that post-trial motion, other than a passing reference to an apparent violation of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.515 (2002), and Appellants' editorialized summary of Virginia's health prior to her death. ***See*** Post-Trial Motion, 6/10/24, at 6-7; ***see also*** Memorandum of Law in Support of Post-Trial Motion, 9/23/24, at 9 (arguing that Virginia's "advanced age" and co-morbidities made it "highly unlikely that she would have lived much longer, or that her quality of life would have been good, even if she had survived her post-operative course[]" and that she "suffered little out-of-pocket expenses and no loss of employment[]").[7] Nevertheless, Appellants' brief before this Court does not even reference the MCARE Act or alleged violations thereof. Instead, it distinctively argues: (1) there were only economic damages of $21,000 (funeral costs), and no evidence of non-economic damages sufficient to support the jury's award; (2) through the lens of Pennsylvania's Wrongful Death Act, 42 Pa.C.S. § 8301, and Survival Act, 42 Pa.C.S. § 8302, Appellee failed to prove damages and/or the jury's award was "arbitrary and capricious"; and (3) the ultimate award was based on

---

[7] As stated, above, Appellants' concise statement only challenges the damages as being against the weight of the evidence by relying on nonspecific boilerplate argument.

"improper factors," such as sympathy.[8] Appellants' Brief at 37-42.

In any event, again, the court did not expound upon the issue of damage quantity of Appellants' weight-of-the-evidence claim in its Rule 1925 opinion[9] because Appellants' post-trial motion and concise statement failed to alert the court to the specific claims now raised in reference to economic versus non-economic damages and regarding whether Appellee adequately tied Virginia's "pain to her blood clot and pulmonary embolism." Appellants' Brief at 41 (all raised for the first time in Appellants' brief filed in this Court). Accordingly, we find waiver of this issue due to Appellants' failure to, with specificity, raise issues before the trial court, giving it the opportunity to address the same, prior to appellate review. *See* Pa.R.A.P. 302(a); *see also Kemp*, 473 A.2d at 1374. Appellants' lack of development before the trial court of its claims regarding the Wrongful Death Act and Survival Act, vital components of their overarching weight-of-the-evidence damages claim in their appellate brief, *see* Appellants' Brief at 38-41, has foreclosed appellate review, and therefore,

---

[8] While "sympathy" is mentioned in the post-trial motion and corresponding memorandum, it is only raised in reference to the larger "weight of the evidence" standard employed by Appellants, i.e., that the damages "could only have resulted from prejudice, sympathy, speculation and conjecture[.]" *E.g.*, Memorandum of Law in Support of Post-Trial Motion, 9/23/24, at 10. However, other than providing a singular, oblique citation, referenced below, it is unclear where, precisely, sympathy's inclusion is derived from, as there is no attribution to any other on-point authority.

[9] Appellee avers that Appellants' claim in this domain, too, is a sufficiency, rather than a weight-of-the-evidence, challenge. *See* Appellee's Brief at 45.

they are due no relief.[10] ***See Dollar Bank***, ***supra***.

As none of Appellants' three issues warrant reversal, we affirm the $2,903,030.82 judgment in favor of Appellee and against Appellants.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/27/2026

---

[10] Appellants, as an ancillary matter, argue that the jury award was improperly predicated on sympathy. ***See*** Appellants' Brief at 41-42 (showing the jury a picture of Virginia as she appeared in the hospital when her children arrived, to which the court instructed Appellee to take down quickly thereafter, created "improper" sympathy amongst the jurors). However, other than asserting that sympathy is an improper consideration, a statement that does not have any citation thereto other than a reference to a case establishing that, in Appellants' summation, the judiciary must "reign in" awards in cases involving sympathetic plaintiffs, ***see id.*** at 41 (citing ***Haines v. Raven Arms***, 640 A.2d 367, 370 (Pa. 1994)), Appellants have not demonstrated that the admission of evidence that led to the alleged juror sympathy, to the extent it existed here, amounted to reversible error. Moreover, we reiterate that Appellants failed to illuminate this specific and particular ground, as part of its larger weight-of-the-evidence claim, before the trial court.